UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY GRANT FRYE,

        Petitioner,

    v.

WARDEN, San Quentin State Prison,

        Respondent.

NO. CIV. S-99-628 LKK/KJM

O R D E R

Petitioner has moved for reconsideration of three rulings made by the magistrate judge: (1) the exclusion of a Strickland expert who would testify as to the reasonableness of counsel's conduct, (2) the denial of a protective order barring respondent from interviewing a juror without the presence of petitioner's counsel, and (3) the scope of a separate protective order that was issued. For the reasons explained below, the motion is denied.

**A. Standard**

"The district court must defer to the magistrate judge's orders unless they are clearly erroneous or contrary to law." Grimes v. San Francisco, 951 F.2d 236, 240 (9th Cir. 1991).

1

Under this standard, the magistrate judge's decision is affirmed unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

**B. Analysis**

    **1. Strickland Expert**

Petitioner objects to the magistrate judge's exclusion of Professor Laurie Levenson's testimony concerning the ineffective assistance of counsel claims. Expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. A judge is "qualified to understand the legal analysis required by *Strickland*." Bonin v. Calderon, 59 F.3d 815, 838 (9th Cir. 1995) (finding no abuse of discretion in district court's refusal to permit testimony by Strickland expert). Accordingly, the magistrate judge could reasonably conclude that Professor Levenson's live testimony in this case would not be helpful, particularly given that she nevertheless permitted petitioner to present through briefing the underlying authorities relied upon by the expert.[1] See Williams v. Woodford, 384 F.3d 567, 590 (9th Cir. 2004) ("[A] district court in a habeas corpus proceeding need not

---

[1] Indeed, upon receipt of this briefing, the magistrate judge decided to admit Professor Levenson's declaration. See Williams, 384 F.3d at 607 ("[A] district court in a habeas corpus proceeding has the discretion to conduct an evidentiary hearing by choosing a middle path that includes documentary evidence, but excludes oral testimony. A district court must only give the petitioner full opportunity to present the relevant facts.") (citations omitted).

2

1 conduct full evidentiary hearings, but may instead expand the
2 record . . . with discovery and documentary evidence.") (internal
3 quotation marks omitted). The magistrate judge's decision is not
4 contrary to law merely because other courts have arrived at a
5 different decision on receiving the testimony of <u>Strickland</u>
6 experts. See <u>United States v. Rahm</u>, 993 F.2d 1405, 1409-10 (9th
7 Cir. 1993) (decision to admit or exclude expert testimony is within
8 the court's discretion).

### 2. Denial of Protective Order

Petitioner also argues that the magistrate judge erred in refusing to impose a protective order barring the state from conducting interviews with Juror Shelby Fairfield and her minister without the presence of petitioner's counsel. Petitioner claims that Juror Fairfield committed misconduct during the trial by discussing the case with her minister.

The purported reasons for the protective order are twofold. First, petitioner alleges that respondent failed to fully disclose important information that Juror Fairfield provided to a state investigator.

Petitioner's declaration from Ms. Fairfield indicated that she spoke with her minister between the guilt and penalty phases about the difficult decisions she had made in finding the petitioner guilty and would have to make in deciding whether he should be sentenced to death. The state submitted a responsive declaration from an agent who had previously interviewed Ms. Fairfield regarding claims raised in petitioner's state habeas petition.

3

That declaration stated that Ms. Fairfield asked her minister what the Bible had to say about the death penalty and her minister gave a written response, "which in summary said that the people voted to enact laws to determine what crimes are and what the penalties should be." The state also submitted a declaration from Ms. Fairfield in which she state she was unsure about the timing of her conversation with her minister.

The agent's investigative notes (which the court found good cause for petitioner to discover, based on the conflicts between the declarations) indicated that the minister's response included quotations from the Bible. In addition, Fairfield told the agent that, in her opinion, the minister would have given an individual the death sentence if the individual was found guilty and the death penalty statutes applied. Petitioner argues that these omissions show that the agent's declaration was misleading (and by virtue thereof, constitutes misconduct by the deputy attorney general who filed it).

As the magistrate judge ruled, however, petitioner inflates the importance of this information. The statement regarding quotations from the Bible is in line with the agent's declaration, which stated that Fairfield asked the minister, "what the Bible said about the death penalty" and her minister gave her "a written response." That the written response included Bible quotations is not inconsistent with the agent's declaration. In addition, the statement by the minister that he would give the death penalty if the individual was guilty, and *if* the death penalty laws *applied*,

4

simply indicates that the minister would follow the law. The magistrate judge's ruling was not clearly erroneous.

Second, petitioner argues that a protective order should be issue based on events that occurred in another capital habeas case in this district, <u>Stanley v. Ayers</u>, CV 95-1500. According to petitioner, declarations submitted in that case indicate that the conduct of the deputy attorney general during the interview comported with office policies. This misconduct, which took place eight years ago in the context of a different case, is simply too attenuated to warrant the extraordinary relief requested here. Again, the court finds that the magistrate judge's ruling was not clearly erroneous.[2]

### 3. Scope of Protective Order

Petitioner also argues that the protective order issued by the magistrate judge is deficient because it does not expressly encompass experts who worked with defense counsel. As the magistrate judge noted, however, "such [specific] coverage is not necessary, as this court concluded following the parties' last appearance." In addition, respondents indicate that they had already felt bound by the protective order so construed. Petitioner also argues that the order should have included an express prohibition on indirect use of privileged material (as

---

[2] Similarly, while petitioner argues that the magistrate judge denied him due process by not permitting him to submit the evidence referenced above, it is clear that the magistrate judge took his representations of that evidence at face value but nevertheless concluded that a protective order would not be appropriate.

5

opposed to merely direct use) but this too appears unnecessary, as it may be reasonably inferred.  Particularly where the protective order in this case closely mirrors that approved by the Ninth Circuit in <u>Bittaker v. Woodford</u>, 331 F.3d 715 (9th Cir. 2003) and <u>Osband v. Woodford</u>, 290 F.3d 1036 (9th Cir. 2002), the court finds that the protective order entered by the magistrate judge was not clearly erroneous or contrary to law.

## Conclusion

For the reasons explained above, the motion for reconsideration is denied.

IT IS SO ORDERED.

DATED: August 14, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

6