IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY GRANT FRYE,

    Petitioner,

vs.

WARDEN, San Quentin State Prison,

    Respondent.

No. CIV S-99-0628 LKK KJM

DEATH PENALTY CASE

ORDER

    In an order dated May 12, 2009, this court denied petitioner's request to exclude the testimony of respondent's expert Dr. Reese Jones as unreliable. The court permitted petitioner to renew his motion after Dr. Jones testified. Petitioner has done so. He moves to exclude Dr. Jones' testimony as unreliable under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). He argues Dr. Jones neither based his opinions on sufficient data nor used reliable methods to reach them.

/////
/////
/////
/////
/////

1

I. <u>Applicable Standards</u>

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court in <u>Daubert</u> listed "four non-exclusive factors for consideration in the reliability analysis:"

> "(1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community."

<u>Metabolife Intern., Inc. v. Wornick</u>, 264 F.3d 832, 841 (9th Cir. 2001) (citing <u>Daubert</u>, 509 U.S. at 593-94).

In the May 2009 order, this court described the role of <u>Daubert</u> and the preference for allowing evidence to be subject to the adversarial system rather than simply excluding it. The point is worth repeating here.

> Rule 702 was amended in 2000 "in response to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) . . . ." Advisory Committee Notes to 2000 Amendments to Fed. R. Evid. 702. "In <u>Daubert</u> the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. . . ." <u>Id.</u> "The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." <u>Id.</u> The Note warns, however, that

/////

/////

/////

> [a] review of the caselaw after <u>Daubert</u> shows that the rejection of expert testimony is the exception rather than the rule. <u>Daubert</u> did not work a seachange over federal evidence law, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. <u>United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi</u>, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in <u>Daubert</u> stated: Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. 509 U.S. at 595.

<u>Id</u>.

May 12, 2009 Order at 6-7.

II. <u>Analysis</u>

Petitioner argues respondent bears the burden of showing Dr. Jones' testimony is both relevant to claims that are the subject of the evidentiary hearing and reliable under Rule 702.

    A. <u>Relevance</u>

Petitioner initially argues that Dr. Jones' testimony is relevant only to claim 25 because Dr. Jones testified that he was only asked to render an opinion as to petitioner's competence. Claim 25 is the only evidentiary hearing claim to which petitioner's competence is relevant. In claim 25 petitioner argues that the jail's withdrawal of petitioner's anti-anxiety medication just prior to the beginning of the penalty phase interfered with petitioner's ability to assist his counsel. Second Am. Pet. (Docket No. 104) at 207-210. Respondent argues that Dr. Jones' testimony also is relevant to claim 2 because he considered petitioner's "mental condition" as well as his competence. In claim 2 petitioner argues trial counsel should have investigated and presented evidence that petitioner lacked the mental state necessary for first degree murder. <u>Id.</u> at 72-81.

In his declaration, Dr. Jones stated that he was asked by respondent's counsel to "offer my professional opinions concerning [petitioner's] mental condition and competence

1  during his trial in 1988." June 11, 2008 Decl. of Dr. Reese Jones (Jones Decl.; Docket No.
2  298-1) ¶ 3. Dr. Jones repeated that instruction during his deposition. Aug. 7, 2008 Depo. of Dr.
3  Reese Jones (Docket No. 384) at 10-11. Dr. Jones' declaration also addresses the question:
4  "How seriously impaired is [petitioner's] mental capacity?" Jones Decl. ¶ 14. While Dr. Jones'
5  final conclusion does appear to be about competence, he also opines about petitioner's mental
6  state relevant to claim 2. See id. ¶ 37 ("My opinion is that this summary of Mr. Frye's complex
7  behaviors just before and during the murders and during the weeks following them illustrates that
8  Mr. Frye  capable [sic] of carrying out complex, planned and sustained behaviors, and assess
9  [sic] alternatives and consequences of his actions."). Testimony regarding petitioner's mental
10 abilities at the time of the crimes is relevant to the prejudice component of petitioner's assertion
11 of ineffective assistance of counsel in claim 2.
12         Petitioner has attempted previously to limit Dr. Jones' testimony to claim 25.
13 This court has made clear more than once that Dr. Jones' testimony was limited to the subjects
14 raised in his declaration and deposition. Nov. 14, 2008 Order (Docket No. 388) at 4:8-12;
15 Transcript of Aug. 3, 2009 Testimony of Dr. Reese Jones (Docket No. 497) at 8:16-22, 9:7-9. As
16 stated above, Dr. Jones' declaration covers matters relevant to claim 2. The court will consider
17 Dr. Jones' testimony with respect to both claims 2 and 25.
18         Petitioner's more specific arguments regarding relevance relate to claim 25.
19 Petitioner first argues Dr. Jones' testimony is not relevant because it addresses only petitioner's
20 "capacity" for competence.
21         Petitioner spends a great deal of time arguing that Dr. Jones' testimony is
22 irrelevant because he considered petitioner's capacity for competence as opposed to petitioner's
23 competence on the day in question, the first day of the penalty phase. For several reasons,
24 petitioner's arguments are not persuasive. First, petitioner's "capacity for competence" is
25 relevant to whether or not petitioner was competent on the day in question. His capacity is not
26 definitive; and it may not even be particularly helpful depending on the entire record relevant to

4

claim 25.  However, it cannot be said that Dr. Jones' testimony is so irrelevant that it has no "potential to assist the trier of fact."[1]  Fed. R. Evid. 702.

Second, the issue of Dr. Jones' failure to opine on petitioner's competence on the day in question was grounds for extensive cross-examination of Dr. Jones.  Petitioner has had more than adequate opportunity to show and argue Dr. Jones' opinion is not entitled to much weight, and he will have another opportunity to make this argument in final merits briefing on claim 25.

B. Reliability

Petitioner claims Dr. Jones had insufficient facts to render an opinion regarding petitioner's competence on the first day of the penalty phase.  However, this argument is based on petitioner's claim that Dr. Jones' opinion regarding petitioner's capacity for competence was irrelevant.  Because, as discussed above, petitioner's capacity for competence is relevant to claim 25, it is not necessary to examine petitioner's claim that Dr. Jones' testimony is unreliable because he did not consider observations of petitioner on the day in question.  Moreover, Dr. Jones did not base his opinion on pure speculation.  According to respondent, Dr. Jones reviewed:

> transcripts from Petitioner's state competency trial; various reports written by mental health professionals for both sides at the time of trial; various medical records that predated the trial; factual summaries of trial testimony from all three phases of the state trial; statements from jail personnel in contact with Petitioner during the

---

[1] Petitioner also claims there is no factual dispute that he had a "capacity for competence" during the time in question so Dr. Jones' testimony is not necessary.  Whether or not petitioner agrees that petitioner had the capacity at issue, respondent should have the opportunity to prove a relevant point through an expert because expert testimony may provide it more weight.

5

state trial; evaluations of Petitioner conducted by San Quentin personnel shortly after the trial and for a few years thereafter; current reports -- including test results and family interviews – generated by Petitioner's mental state witnesses and social historian.

Resp't's Brief re Jones' Testimony (Docket No. 512) at 5:17-23. That Dr. Jones could, or should, have reviewed more data goes to the weight, not the admissibility of his opinions. See Coleman v. De Minico, 730 F.2d 42, 46 n.4 (1st Cir. 1984) ("that [the expert] [based] his opinions . . . on sufficient, albeit incomplete, facts . . . take[s] his opinions outside the realm of mere guess and conjecture").

Petitioner also argues that respondent has made no showing that Dr. Jones' methods were reliable. The objective of Daubert is "to 'make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199-200 (4th Cir. 2001) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). As other courts have recognized, the Daubert factors do not necessarily apply easily when considering the testimony of a mental health expert. See Lindh v. Murphy, 96 F.3d 856, 884 (7th Cir. 1996) (Wood, J., concurring in part and dissenting in part) ("in a field like psychiatry . . . methodologies are not readily subject to the kind of objective scientific verification the Supreme Court called for in Daubert"), rev'd on other grounds, 521 U.S. 320 (1997).

Further, while petitioner insists repeatedly that meeting the standards of Rule 702 and Daubert is "required," the Supreme Court has recognized that the Daubert standard is flexible and reliability must be analyzed in the context of each case:

> Our emphasis on the word "may" thus reflects Daubert's description of the Rule 702 inquiry as "a flexible one." 509 U.S., at 594. Daubert makes clear that the factors it mentions do *not* constitute a "definitive checklist or test." Id., at 593. And Daubert adds that the gatekeeping inquiry must be " 'tied to the facts' " of a particular "case." Id., at 591. We agree with the Solicitor General that "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his

> testimony." The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999) (emphasis in original; internal citations abbreviated or omitted). Thus, the Daubert factors are "illustrative rather than exhaustive" and they are not "equally applicable (or applicable at all) in every case." Daubert v. Merrell Dow Pharmaceuticals, Inc. ("Daubert II"), 43 F.3d 1311, 1317 (9th Cir. 1995) (case on remand). In other words, "[t]he reliability inquiry is case-specific." Crowe v. Marchand, 506 F.3d 13, 18 (1st Cir. 2007) (citing Kumho Tire, 526 U.S. at 141).

Petitioner's argument that respondent "must" establish the reliability of Dr. Jones' methods by "reference to articles, papers or studies validating the expert's methodology" is, in light of the discussion above, misleading. See Pet'r's Reply Brief at 5-6. Respondent has shown that the Court of Appeals for the Ninth Circuit recognizes that experts may make a retrospective competency determination based on data like that used by Dr. Jones. See Boyde v. Brown, 404 F.3d 1159, 1167 & n.7 (9th Cir. 2005) (accurate retrospective evaluation may be possible by "'consulting contemporaneous medical reports'" (quoting Williams v. Woodford, 384 F.3d 567, 609 (9th Cir. 2004))[2]; cf. Odle v. Woodford 238 F.3d 1084 (9th Cir. 2001) (retrospective competency hearing possible where testimony and reports of mental health experts, contemporaneous accounts of the defendant's behavior, and other medical and jail records available). The fact that Dr. Jones may have relied upon insufficient data is an issue that petitioner may, and did, raise on cross-examination. It does not require this court to exclude Dr. Jones' testimony. Dr. Jones' experience is adequate to allow him to render an opinion, based on historical data, regarding petitioner's competence, or capacity for competence, at the time of trial.

---

[2] The Boyde decision has been amended, but the amendment does not affect the portion of the original decision cited here. See Boyde v. Brown, 421 F.3d 1154 (9th Cir. 2005).

7

It also allows him to render an opinion regarding petitioner's mental state at the time of the crimes. That Dr. Jones' testimony might not be particularly credible or persuasive after cross-examination also does not require this court to exclude it.

Petitioner argues that Dr. Jones' own testimony shows he had no basis for the methodology used. As noted, the Supreme Court has stated that the objective of Daubert 's gatekeeping requirement is to "make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. Here, Dr. Jones did testify that if he were "treating a patient," then relying solely on historical data would "be nonsensical and wrong, malpractice, entirely." Transcript of Aug. 3, 2009 Evidentiary Hearing (Docket No. 502) at 106:12-14, 29-31. Dr. Jones was not asked to treat petitioner; he was asked, as many mental health experts are asked, to review records to determine whether or not they supported another doctor's opinion regarding someone's mental health. The question under Kumho Tire is not whether Dr. Jones would have relied upon historical records only to treat a patient, but whether, in a non-judicial setting, he would have relied on historical records to provide an opinion about someone's mental state in the past. See Sheehan v. Daily Racing Form, 104 F.3d 940, 942 (7th Cir. 1997) (standard is whether expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting"). Moreover, a physical examination is neither required nor necessarily reliable when making a retrospective determination of competency. See Boyde, 404 F.3d at 1166-67 (expert's reliance on personal examination of the petitioner to make retrospective competency determination disfavored).

### C. No Jury Confusion

Many cases cited by petitioner involve decisions by trial judges about what juries may or may not hear. There is no issue of jury confusion in an evidentiary hearing in a federal habeas corpus case. This court had and will have the opportunity at each step of the way -- during the hearing, in reading the transcripts, and in considering the parties' briefs -- to determine

just what parts, if any, of Dr. Jones' testimony survived petitioner's counsel's thorough cross-examination so as to support respondent's arguments that petitioner was competent to consult with his attorneys during the first day of the penalty phase and that petitioner's counsel was not ineffective for failing to investigate and present evidence that petitioner lacked the mental state necessary for first degree murder.

For the foregoing reasons, petitioner's request to exclude Dr. Jones' testimony on the basis of Federal Rule of Evidence 702 and Daubert is denied.

DATED: August 9, 2010.

_____
U.S. MAGISTRATE JUDGE

frye jones 702.rev or