UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERRY GRANT FRYE,

          Petitioner,

    v.

ROBERT WONG, ACTING WARDEN OF
SAN QUENTIN STATE PRISON,

          Respondent.

No.  CIV. S-99-628 LKK CKD

**DEATH PENALTY CASE**

**ORDER**

    Petitioner Jerry Grant Frye is incarcerated in San Quentin State Prison, under a death sentence. He is presently before this court seeking a writ of habeas corpus under 28 U.S.C. § 2254.

    Petitioner requests reconsideration of the Magistrate Judge's denial of an objection to the admission of certain expert testimony. Respondent opposes the request. For the reasons set forth below, petitioner's request will be denied in its entirety.

**I. BACKGROUND**

    Petitioner initiated this federal habeas corpus proceeding on March 29, 1999. The case was initially assigned to former Magistrate Judge John F. Moulds. When Magistrate Judge Moulds

1   subsequently recused himself, the case was reassigned to then-

2   Magistrate Judge Kimberly J. Mueller, on December 20, 2004. (ECF

3   Nos. 188, 189.) Upon the latter's confirmation as U.S. District

4   Court Judge, the case was reassigned to Magistrate Judge Dale A.

5   Drozd on January 6, 2011 (ECF No. 564), then to Magistrate Judge

6   Edmund F. Brennan on February 18, 2011 (ECF No. 574), and then to

7   Magistrate Judge Carolyn Delaney on August 2, 2011. (ECF

8   No. 596.)

9       Petitioner filed the operative Second Amended Petition for

10  Writ of Habeas Corpus, which contains 45 claims for relief, on

11  March 31, 2003. ("Second Amended Petition," ECF No. 104.) An

12  Answer was filed on July 1, 2003. (ECF Nos. 112, 113.)

13      On July 19, 2004, petitioner filed a motion for an

14  evidentiary hearing. (ECF No. 162.) On October 11, 2005, the

15  Magistrate Judge heard argument on this motion. (ECF No. 202.) On

16  December 1, 2006, having allowed time for supplemental briefing,

17  the Magistrate Judge granted the motion in part, permitting an

18  evidentiary hearing to proceed on petitioner's claim 2

19  (ineffective assistance of counsel at the guilt phase, based on

20  failure to adequately investigate and present evidence that would

21  support a mental state defense), claim 3 (ineffective assistance

22  of counsel at the guilt phase, based on his attorneys' failure to

23  develop and present a coherent trial strategy), claim 25

24  (interference with petitioner's Sixth Amendment right to counsel,

25  due to jailers' decision to take petitioner off of anti-anxiety

26  medications prior to the penalty phase), claims 28 and 29

27  (ineffective assistance of counsel at the penalty phase, based on

28  failure to investigate and present evidence regarding

petitioner's mental health, his use of drugs and alcohol, and his past history), and claim 44 (alleged violation of petitioner's Fifth and Fourteenth Amendment rights, based on contention that jury members saw petitioner shackled, despite judge's instruction that he not be shackled in the courtroom), as well as certain allegations in his claim 7 (ineffective assistance of counsel, evinced by a failure to object when the prosecutor vouched for a key witness's credibility) and claim 42 (alleged violation of petitioner's Sixth Amendment rights, due to juror misconduct in communicating with her minister, in violation of the Sixth Amendment). (ECF No. 214.)

Both sides filed motions for reconsideration of this order, which were in turn referred to this court. (ECF Nos. 217, 218.) On December 13, 2007, the court denied both motions. (ECF No. 227.)

On June 20, 2008, respondent filed an expert witness disclosure regarding Dr. Reese T. Jones, M.D., whose testimony at the evidentiary hearing is the subject of the instant motion for reconsideration. (ECF No. 298.) Dr. Jones was then a Professor of Psychiatry at the University of California-San Francisco School of Medicine.[1] ("Reese Jones Declaration" ¶ 1, ECF No. 298-1.)

On August 28, 2008, petitioner took Dr. Jones's deposition. ("Reese Jones Deposition," ECF No. 384.)

On October 31, 2008, petitioner filed a document entitled "Motion in Limine Regarding Claims 2, 3, 7, 25, 28 and 29," in which petitioner objected, *inter alia*, to the admission of

---

[1] The court does not know whether Dr. Jones remains employed in this capacity.

3

1  Dr. Jones's testimony at the evidentiary hearing. (ECF No. 371.)

2  Petitioner's objections were as follows:

3      1. As a psychiatrist, Dr. Jones was not qualified to give

4      expert opinions regarding neurology or neuropsychology.

5

6      2. Dr. Jones ought to be restricted to testifying solely

7      regarding conclusions contained within his expert report.

8

9      3. Dr. Jones reviewed petitioner's medical records from San

10      Quentin Prison, in violation of federal privacy laws.

11

12      4. Dr. Jones failed to bring to his deposition all of the

13      materials he had reviewed and relied upon in forming his

14      conclusions, and failed to supplement his testimony with

15      this information post-deposition. (Id. at 12-18.)

16  On November 7, 2008, respondent filed an opposition disputing

17  each of these objections. (ECF No. 380.)

18      Upon considering petitioner's objections, the Magistrate

19  Judge ordered respondent to file a declaration from Dr. Jones

20  (i) summarizing his qualifications to testify in the fields of

21  neurology and neuropsychology and (ii) indicating whether he had

22  provided petitioner with all of the documents he reviewed. (ECF

23  No. 388.) The Magistrate Judge also ordered that Dr. Jones's

24  testimony be limited to the subject matter of his expert report

25  and deposition, with the proviso that, in rebuttal, he could

26  testify outside the scope of these documents to the extent that

27  petitioner's experts exceeded them. (Id.) On November 18, 2008,

28

1  respondent filed the declaration of Dr. Jones, as ordered. (ECF
2  No. 390.)

3      In an order dated May 12, 2009, the Magistrate Judge denied
4  without prejudice petitioner's request to exclude Dr. Jones's
5  testimony. (ECF No. 470.) On August 3 & 4, 2009, the Magistrate
6  Judge heard testimony from Dr. Jones regarding petitioner's
7  claims 2 and 25. (ECF Nos. 497-98, 502-503.) At the hearing,
8  petitioner objected to Dr. Jones's qualifications to testify as
9  an expert under Fed. R. Evid. 702 ("Reese Jones Testimony" 102-
10  119, ECF No. 502.) The Magistrate Judge overruled the objection
11  without prejudice, but announced her willingness to receive
12  briefing on the question. (Id. 120.) On August 5, 2009, the
13  Magistrate Judge issued an order setting a briefing schedule on
14  the question. (ECF No. 500.)

15      On October 23, 2009, pursuant to the briefing schedule,
16  petitioner renewed his motion to exclude Dr. Jones's testimony,
17  contending that it should have been excluded under Fed. R.
18  Evid. 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579
19  (1993). (ECF No. 511.) On August 10, 2010, the Magistrate Judge
20  denied the renewed motion. ("Order," ECF No. 524.) On September
21  23, 2010, petitioner filed the request for reconsideration that
22  is presently before the court. ("Request," ECF No. 532.) On
23  October 22, 2010, respondent filed an opposition. ("Opposition,"
24  ECF No. 542.) The Request was then taken under submission by this
25  court.

26      On December 4, 2013, the Magistrate Judge issued findings
27  and recommendations regarding petitioner's habeas corpus

28

1    petition.[2] (ECF No. 632.) She therein recommends denial of

2    petitioner's claims 2, 3, 4, 5, 7, 25, 37, 42, and 44, and

3    resumption of the evidentiary hearing on petitioner's claims 28

4    and 29. While the Magistrate Judge's findings and recommendations

5    cannot, and do not, influence the court's ruling herein, it bears

6    mention that the findings and recommendations at no point refer

7    to Dr. Jones's testimony, and the Magistrate Judge appears not to

8    have relied on Dr. Jones's testimony in any way. (Id.)

9    Respondent's objections to these findings and recommendations

10   also make no reference to Dr. Jones's testimony. (ECF No. 640.)

11        The court also notes that Cullen v. Pinholster, 563 U.S. __,

12   131 S. Ct. 1388 (2011), decided after Dr. Jones gave his

13   testimony, bears on the ultimate admissibility of Dr. Jones's

14   testimony. Under Pinholster, a federal court that is evaluating a

15   capital habeas petition may not consider evidence which was not

16   before the state court in making a determination as to whether

17   the state court decision was contrary to law or unreasonable (as

18   28 U.S.C. § 2254 defines those terms). In other words, Dr.

19   Jones's testimony could only be considered if the court overruled

20   the Magistrate Judge's recommendations that it deny petitioner's

21   claims 2 and 25. So even if the court were to grant petitioner's

22   motion herein, the net effect would only be to strike Dr. Jones's

23   testimony from the record until such time as the Magistrate Judge

24   had to revisit the issue, a contingency which might never occur.

25   ////

26   _____

27   [2] Objections to these findings and recommendations were initially
     due within 60 days. (ECF No. 632.) Petitioner has moved four
     times for an extension of time to file his objections, which are

28   currently due no later than July 7, 2014. (ECF No. 641.)

## II. STANDARDS

Petitioner's reconsideration request has been under submission for nearly four years. In considering it, the court will apply the legal standards presently in effect, rather than those that were in effect when the challenged decision was rendered. In doing so, the court follows the general principle that "'the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.'" Henderson v. United States, __ U.S. __, 133 S. Ct. 1121, 1126 (2013) (quoting United States v. Schooner Peggy, 1 Cranch 103, 110 (1801) (Marshall, C.J.)). Accord Tully v. Mobil Oil Corp., 455 U.S. 245, 247 (1982) ("The normal rule in a civil case is that we judge it in accordance with the law as it exists at the time of our decision.").

### A. Standard re: reconsideration

28 U.S.C. § 636(b)(1)(A) provides:

> Notwithstanding any provision of law to the contrary . . . a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except [certain specified matters]. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a) similarly provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. [. . .] The district judge in the case must

7

> consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

"The way in which parties may object to magistrates' rulings under Rule 72(a) . . . is governed by local rules." 12 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure: Civil § 3069 (2d ed. 2014).

Under Local Rule 303(c), "A party seeking reconsideration of the Magistrate Judge's ruling shall file a request for reconsideration by a Judge . . . . Such request shall specifically designate the ruling, or part thereof, objected to and the basis for that objection." Local Rule 303(f) provides that "[t]he standard that the assigned Judge shall use in all such requests is the 'clearly erroneous or contrary to law' standard set forth in 28 U.S.C. § 636(b)(1)(A)."

An order is "clearly erroneous" if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." Concrete Pipe and Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 622 (1993).

Under the "contrary to law" standard, a district court may conduct independent review of purely legal determinations by a magistrate judge. Computer Econ., Inc. v. Gartner Grp., Inc., 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999) (Whelan, J.).

8

1    The movant's mere disagreement with a ruling is not grounds

2    for reconsideration. <u>U.S. v. Westlands Water Dist.</u>, 134 F. Supp.

3    2d 1111, 1131 (E.D. Cal. 2001) (Wanger, J.).

4                    **B. Standard re: admission of expert testimony**

5    In determining whether the testimony of an expert is

6    admissible under Federal Rule of Evidence 702,[1] the court must

7    apply the standards developed in <u>Daubert</u>, 509 U.S. at 579, <u>Kumho</u>

8    <u>Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), and their progeny.

9    Under Rule 702:

10
11            A witness who is qualified as an expert by
             knowledge, skill, experience, training, or
12           education may testify in the form of an
             opinion or otherwise if:

13           (a) the expert's scientific, technical, or
             other specialized knowledge will help the
14           trier of fact to understand the evidence or
             to determine a fact in issue;
15

16           (b) the testimony is based on sufficient
             facts or data;
17
             (c) the testimony is the product of reliable
18           principles and methods; and

19           (d) the expert has reliably applied the
             principles and methods to the facts of the
20           case.[3]

21    The proponent of expert testimony has the burden of establishing

22    that these requirements for admissibility are met by a

23    _____

      [1] Hereinafter, the term "Rule" refers to the applicable Federal
24    Rule of Evidence.

25    [3] This (current) version of Rule 702 reflects amendments enacted
      in 2011 that were "intended to be stylistic only [and not
26    intended] to change any result in any ruling on evidence
      admissibility." Fed. R. Evid. 702, Advisory Committee's Note to
27    the 2011 Amendments. While the challenged Order relies on Rule
      702 as it read in 2010, the change has no substantive effect on
28    the court's analysis herein.

                                    9

preponderance of the evidence. Fed. R. Evid. 702, Advisory Committee's Note to the 2000 Amendments. Rule 702 "does not distinguish between scientific and other forms of expert testimony. The trial court's gatekeeping function applies to testimony by any expert." Id. (citing Kumho Tire, 526 U.S. at 141).

Under Daubert, the court exercises its gatekeeping function through conducting a two-step assessment: first, it determines whether the proposed expert's testimony is reliable, and second, whether it is relevant. 509 U.S. at 592-593.

District courts have great flexibility in choosing which factors to apply in assessing the admissibility of expert testimony. "[T]here are many different kinds of experts, and many different kinds of expertise." Kumho Tire, 526 U.S. at 150. "We can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue." Id.

Nevertheless, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." General Elec. v. Joiner, 522 U.S. 136, 146 (1997). The court may conclude that "there is simply too great an analytical gap between the data and the opinion proffered." Id.

Ultimately, district courts have considerable discretion to admit or exclude expert testimony. See id.

////

**III. ANALYSIS**

Petitioner seeks reconsideration of the Order denying his request, based on Rule 702 and <u>Daubert</u>, to exclude Dr. Jones's testimony. The crux of petitioner's argument is that "the Magistrate Judge abandoned the gatekeeping function, and failed to hold Respondent to its burden. In the eight-page [O]rder admitting Dr. Jones's opinions, the Magistrate Judge never made the findings required by Rule 702 . . . ." (Request 5.)

                        **A. Was it clearly erroneous or contrary to law for the Magistrate Judge to admit Dr. Jones's testimony regarding petitioner's claim 2?**

Petitioner asserts, in his claim 2, that he received ineffective assistance of counsel at the guilt phase of trial, due to his attorneys' failure to adequately investigate and present evidence that would support the defense that he lacked the mental state necessary to commit first-degree murder. Petitioner contends that the evidence in question "included, but was not limited to, the following: neuropsychological deficits; developmental derailment[;] maternal disillusionment and abandonment; paternal corruptive influence and constructive abandonment; alcohol and drug dependence; pathological responses to intoxication; and, intoxication and psychological disturbance at the time of the offense." (Second Amended Petition ¶ 227.)

In his expert witness disclosure, dated June 11, 2008, Dr. Jones addresses, *inter alia*, the following: "Neurobehavioral issues that relate to questions of competence. Is Frye brain-damaged? How seriously impaired is his mental capacity?" (Reese Jones Declaration ¶ 14.) After presenting a summary and analysis

1  of various records and evidentiary items, Dr. Jones concludes as

2  follows:

3              My opinion is that this summary of Mr. Frye's

4              complex behaviors just before and during the
             murders and during the weeks following them

5              illustrates that Mr. Frye [*sic*] capable of
             carrying out complex, planned and sustained

6              behaviors, and assess [*sic*] alternatives and
             consequences  of  his  actions.  Even  when

7              intoxicated and despite the certain events in
             his medical history and his life emphasized

8              by petitioner's experts that lead them [*sic*]

9              conclude that he was in many respects not
             competent. (Id. ¶ 37.)

10

11  In his August 7, 2008 deposition, Dr. Jones again adopted the

12  opinions presented in his expert witness disclosure, agreeing

13  that it "contain[s] a complete statement of all opinions [I]'ll

14  express in [my] testimony in this case," and stating that

15  "nothing has changed since" its issuance. (Reese Jones Deposition

16  9:10-15.) He then added, "[A]s I say in paragraph 37,

17  [petitioner]'s behaviors in the real world as he performed the

18  crime and . . . fled from it, really make the point that the

19  impairments hypothesized . . . primarily don't really fit

20  [petitioner]'s ability to perform." (Id. 25:22 - 26:3.)

21      At the subsequent evidentiary hearing, held on August 3 & 4,

22  2009, counsel for respondent confirmed that Dr. Jones's testimony

23  would be presented in connection with claim 2, as well as claim

24  25. (Reese Jones Testimony 8:23-9:4.) Dr. Jones testified therein

25  that the opinion expressed in his June 11, 2008 expert witness

26  disclosure had not been changed "one whit" by materials provided

27  to him subsequently. (Id. 69:8-13.)

28

**1. Petitioner's argument misconstrues the record**

Petitioner significantly misconstrues the record. In response to petitioner's objections at the evidentiary hearing, the Magistrate Judge invited the parties to brief the issue of whether Dr. Jones's testimony was admissible under Rule 702 and Daubert. In his opening brief, petitioner devotes only half a page to claim 2:

> Respondent asserted the [*sic*] Dr. Jones was being offered as part of the State's case regarding . . . Claim 2 "to the extent it talks about the investigation concerning mental state defenses." [citation to transcript of evidentiary hearing.] Dr. Jones, however, never testified that he was asked to form an opinion regarding mental state defenses, and there is no mention of any mental state defense in his report. During his voir dire examination and direct examination, Dr. Jones mentioned no issue other than competency.

> Petitioner renews his objection to Dr. Jones's opinions to the extent they are offered on the issue of mental state defenses as there was no mention of that issue in his report. Additionally, in that Dr. Jones confined his opinions to the issue of competence, his testimony is not probative on the question [of] whether trial counsel unreasonably failed to investigate viable mental state defense to liability or penalty. [citation to transcript of evidentiary hearing.] ("Petitioner's Opening Brief" 7, ECF No. 511.)

However one may construe these objections, they are not based on Rule 702 or Daubert. Here, petitioner repeatedly contends that there was "no mention" of mental state defenses in Dr. Jones's expert report. He makes the same contention in his reply brief, claiming, "[T]here was no mention of mental state defenses in

1   [Dr. Jones's] report." ("Petitioner's Reply Brief" 12, ECF

2   No. 513.) Petitioner's assertion is simply false. As quoted

3   above, at his deposition, Dr. Jones stated that his opinion in

4   paragraph 37 of his expert report bore on petitioner's "ability

5   to perform" the crime. (Reese Jones Deposition 25:22-26:3.) The

6   reference to mental state defenses is clear. The Magistrate Judge

7   reached a similar conclusion, writing that Dr. Jones "opine[d]

8   about petitioner's mental state relevant to claim 2." (Order 4.)

9                    **2. The Magistrate Judge's ruling regarding claim
                       2 was neither clearly erroneous nor contrary**

10                   **to law**

11       Petitioner had his opportunity to brief the issue of the

12   admissibility of Dr. Jones's testimony, under Rule 702/<u>Daubert</u>,

13   with respect to claim 2. He failed to do so. It was then left to

14   the Magistrate Judge to respond to the argument that petitioner

15   did make, given that it was based on a demonstrably false

16   assertion. The Magistrate Judge chose to construe petitioner's

17   argument as one regarding relevance, and concluded that,

18   "Testimony regarding petitioner's mental abilities at the time of

19   the crimes is relevant to the prejudice component of petitioner's

20   assertion of ineffective assistance of counsel in claim 2."

21   (Order 4.)

22       Under these circumstances, the court, in its reviewing

23   function, is not "left with the definite and firm conviction that

24   a mistake has been committed," <u>U.S. Gypsum</u>, 333 U.S. at 395, and

25   therefore finds that the Magistrate Judge's decision regarding

26   petitioner's objection was not clearly erroneous.

27       Further, the court finds that the Magistrate Judge committed

28   no error of law. Rule 702(a) includes as an admissibility

                                    14

1  requirement that "the expert's scientific, technical, or other

2  specialized knowledge will help the trier of fact to understand

3  the evidence or to determine a fact in issue." Fed. R. Civ.

4  P. 702(a).

5      Petitioner asserts that the Magistrate Judge erred by

6  conflating this requirement with that of relevance. He writes,

7  "Rule 702's 'helpfulness' standard requires a valid scientific

8  connection to the pertinent inquiry as a precondition to

9  admissibility. [citation to _Daubert_, 509 U.S. at 591-92.]

10 Contrary to _Daubert_[], the Order equates helpfulness with mere

11 relevance. The Order makes no finding of a valid scientific

12 connection between Dr. Jones's opinions and the issues raised in

13 Claim 2." (Request 6.)

14     Petitioner is incorrect. The Magistrate Judge did not

15 "equate helpfulness with mere relevance," but simply responded to

16 the argument that petitioner put forward. (Id.) _Petitioner_

17 _himself_ failed to put forward any argument regarding helpfulness

18 or any other aspect of Rule 702. Petitioner's post-hoc attempt,

19 on reconsideration, to raise arguments that he should have raised

20 in his initial briefing is unavailing.

21     Accordingly, the court will affirm the Magistrate Judge's

22 ruling regarding the admissibility of Dr. Jones's testimony

23 regarding petitioner's claim 2.

24 **B. Was it clearly erroneous or contrary to law for the**
   **Magistrate Judge to admit Dr. Jones's testimony regarding**
25 **petitioner's claim 25?**

26     According to petitioner, he was administered prescription

27 anti-anxiety medication during trial. He asserts, in his claim

28 25, that his jailers took him off this medication prior to the

15

1   penalty phase, thereby impairing his ability to assist his

2   attorneys and consequently interfering with his Sixth Amendment

3   right to counsel. (Second Amended Petition ¶¶ 663-678.)

4       A criminal defendant is only competent to stand trial if he

5   "'has sufficient present ability to consult with his lawyer with

6   a reasonable degree of rational understanding . . . and a

7   rational as well as factual understanding of the proceedings

8   against him.'" Cooper v. Oklahoma, 517 U.S. 348, 354 (1996)

9   (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

10      According to his expert witness disclosure, dated June 11,

11  2008, Dr. Jones "was asked by the California Department of

12  Justice to review case records of the petitioner . . . and to

13  offer [his] professional opinions concerning [petitioner's]

14  mental condition and competence during his trial in 1988 when he

15  was charged with two counts of murder." (Reese Jones Declaration

16  ¶ 3.) Dr. Jones addresses, *inter alia*, the issue of petitioner's

17  competence during the penalty phase, as follows:

18          Administration of therapeutic medications
19          during his trial was for a brief time.
            Because of disturbed sleep and increasing day
20          time anxiety developing very soon after he
            learned that he had been found guilty
21          [petitioner] was prescribed, for three to
            four successive evenings, small bedtime doses
22          of Ativan (2 mg), a commonly prescribed anti-
            anxiety and sedative medication. When that
23          small and brief a dose of Ativan was
            stopped[,] not significant withdrawal effects
24          would occur. (Id. ¶ 8.)

25  Dr. Jones then concludes, "My opinion is that the descriptions of

26  his behavior and mental state during the trial did not indicate

27  he was experiencing a degree of mental disorder that would impair

28

16

competence," (id. ¶ 9), and that "[petitioner] was competant [sic] during the trial . . . ." (Id. ¶ 12.)

As set forth above in the discussion of petitioner's claim 2, at a subsequent deposition, Dr. Jones re-adopted the opinions presented in his expert witness disclosure, and at evidentiary hearing, he confirmed that these opinions remained unchanged by materials he had subsequently reviewed.

### 1. The Magistrate Judge's application of Rule 702(a) was neither clearly erroneous nor Contrary to law

The first requirement under Rule 702 for admission of expert testimony is that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).[4]

The Magistrate Judge found that Dr. Jones's testimony satisfied this requirement, writing:

> Petitioner first argues Dr. Jones' testimony is not relevant because it addresses only petitioner's "capacity" for competence. Petitioner spends a great deal of time arguing that Dr. Jones' testimony is irrelevant because he considered petitioner's capacity for competence as opposed to petitioner's competence on the day in question. For several reasons, petitioner's arguments are not persuasive. First, petitioner's "capacity for competence" is relevant to whether or not petitioner was competent on the day in question. His

---

[4] Under the 2010 version of the Rule, the equivalent provision required that "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Again, the difference in wording has no discernible substantive significance for the court's analysis.

1
2
3
4
5

> capacity is not definitive; and it may not
> even be particularly helpful depending on the
> entire record relevant to claim 25. However,
> it cannot be said that Dr. Jones' testimony
> is so irrelevant that it has no "potential to
> assist the trier of fact." [citation to Rule
> 702.] (Order 5.)

6
7
8
9
10

Petitioner argues that, in reaching this conclusion, the Magistrate Judge "applied an incorrect legal standard to admit Dr. Jones's testimony over [p]etitioner's objection that his opinions about capacity for competence would not assist the trier of fact." (Request 7.)

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The court begins by acknowledging that this passage misquotes Rule 702: as then worded, the relevant clause did not read "*potential to* assist," but "*will* assist." But the misquotation is of little import. It is clear enough from the Order that the Magistrate Judge viewed Dr. Jones's testimony as being helpful in some small measure in determining petitioner's competence at the penalty phase. Given the deferential standard of review on reconsideration, Concrete Pipe, 508 U.S. at 622, this court is not "left with the definite and firm conviction that a mistake has been committed." U.S. Gypsum Co., 333 U.S. at 395. And while it would have been desirable for the Magistrate Judge to more explicitly state that Dr. Jones's testimony would be helpful, the omission is too minor to be deemed "contrary to law." Under these circumstances, neither remand nor reversal is merited.

26
////

27
////

28

18

**2. The Magistrate Judge's application of Rule 702(b) was neither clearly erroneous nor contrary to law**

The second requirement under Rule 702 for admission of expert testimony is that "the testimony is based on sufficient facts or data." Fed. R. Evid. 702(b). Petitioner contends that the Magistrate Judge's findings were insufficient to meet this standard.

The Order provides in pertinent part:

> Dr. Jones did not base his opinion on pure speculation. According to respondent, Dr. Jones reviewed:
>
> > transcripts from Petitioner's state competency trial; various reports written by mental health professionals for both sides at the time of trial; various medical records that predated the trial; factual summaries of trial testimony from all three phases of the state trial; statements from jail personnel in contact with Petitioner during the state trial; evaluations of Petitioner conducted by San Quentin personnel shortly after the trial and for a few years thereafter; current reports – including test results and family interviews – generated by Petitioner's mental state witnesses and social historian. [citation to record.]
>
> That Dr. Jones could, or should, have reviewed more data goes to the weight, not the admissibility of his opinions. See Coleman v. De Minico, 730 F.2d 42, 46 n. 4 (1st Cir. 1984) ("that [the expert] [based] his opinions . . . on sufficient, albeit incomplete facts . . . take[s] his opinions outside the realm of mere guess and conjecture.") (Order 5-6.)

Petitioner challenges this application of Rule 702(b) on two grounds. First, he argues that the Magistrate Judge "declined to

19

1   make a finding as to whether Dr. Jones relied upon sufficient

2   facts or data, the first prong of Rule 702's three-part test for

3   reliability."[5] (Request 8.) The court disagrees. This line of

4   argument is quite similar to that advanced by petitioner in

5   challenging the application of Rule 702(a), discussed *supra*.

6   Again, while the Order lacks an explicit statement that

7   Dr. Jones's testimony was "based on sufficient facts or data," it

8   is clear enough from the Magistrate Judge's recital of Dr.

9   Jones's sources that she implicitly found the evidentiary basis

10   for Dr. Jones's opinion sufficient. The Magistrate Judge has not

11   "declined to make [the requisite] finding." She has simply not

12   made the statement as explicit as petitioner would like. Such an

13   omission is neither clear error nor contrary to law.[6]

14       Similarly, the court sees nothing erroneous or contrary to

15   law in the assertion that "[whether] Dr. Jones could, or should,

16   have reviewed more data goes to the weight, not the admissibility

17   of his opinions." (Order 6.) Rule 702(b) requires, as a threshold

18

19   [5] Due to the 2011 amendment to the Rule, this requirement is now
     the second prong of Rule 702's four-part test.

20

21   [6] Respondent makes precisely this point, writing:

22           Petitioner's assertion that the [M]agistrate
             [J]udge required only that Dr. Jones not have
23           based his opinion on pure speculation is much
             too narrow a reading of what the Order
24           actually explained. Read in the context of
             the entire section about reliability, the
25           Order listed the various sources of
             information upon which Dr. Jones relied and
26           cited case law recognizing that retrospective
             competence determinations may be made on data
27           like that used by the doctor. This was not
             error. (Response 5.)

28

for admissibility, that an expert's "testimony is based on
sufficient facts or data." Even if a court finds that this
admissibility requirement is met, nothing bars the testimony's
opponent from then attacking the sufficiency of the facts or data
on which the expert relied. The challenged statement does not
signify that the Magistrate Judge watered down Rule 702(b)'s
requirements; it merely restates an elementary principle of law.

Accordingly, the Magistrate Judge's citation to Coleman, 730
F.2d at 42, is of little import. While that opinion mainly
applies pre-Daubert standards for admissibility, the portion
cited in the Order goes to the ability of opposing counsel to
subject an expert to "vigorous cross-examination," thereby
allowing the finder of fact to "weigh [the expert's] testimony in
light of the evidence and the plausibility of the inferences that
[the expert] had drawn therefrom." Id. Surely petitioner does not
mean to suggest that Rule 702's post-Daubert formulation
precludes an attorney from attacking an expert's sources once
that expert is permitted to testify?

To sum, the court finds that the Magistrate Judge's
application of Rule 702(b) was neither clearly erroneous nor
contrary to law.

### 3. In admitting Dr. Jones's testimony, the Magistrate Judge satisfied the requirements of Rule 702(c) and (d).

The third requirement under Rule 702 for admission of expert
testimony is that "the testimony is the product of reliable
principles and methods." Fed. R. Evid. 702(c). The fourth
requirement is that "the expert has reliably applied the

1  principles and methods to the facts of the case." Fed. R.

2  Evid. 702(d).

3      The Order cites two Ninth Circuit cases in its discussion of

4  the reliability of Dr. Jones's testimony: Odle v. Woodford, 238

5  F.3d 1084, 1089-90 (9th Cir. 2001) and Boyde v. Brown, 404 F.3d

6  1159 (9th Cir. 2005), as amended, 421 F.3d 1154 (9th Cir. 2005).

7      In Odle, the Ninth Circuit reaffirmed its previous holdings

8  that "retrospective competency hearings may be held when the

9  record contains sufficient information upon which to base a

10  reasonable psychiatric judgment." 238 F.3d at 1089-90. Testimony

11  that could be considered in a "fair" retroactive hearing, the

12  appeals court held, included declarations by expert witnesses who

13  had testified at trial, declarations by expert witnesses who had

14  examined the petitioner subsequently, and medical records,

15  psychiatric reports, and jail records submitted at trial. Id. at

16  1090. The petitioner in Odle was tried and convicted in 1983; on

17  remand, the soonest a retrospective competency hearing could be

18  held would have been 2001, some eighteen years later. Id. at

19  1086.

20      In Boyde, 404 F.3d at 1159, the petitioner sought a

21  retrospective evidentiary hearing on the issue of his competency

22  by "offering the affidavits of . . . a psychotherapist, and . . .

23  a psychiatrist, who examined him roughly ten years after his

24  trial." Id. at 1166. After reviewing the affidavits, the district

25  court found that the affidavits did not raise a sufficient doubt

26  about petitioner's competence to trigger the need for a hearing.

27  Id. After a de novo review, the Ninth Circuit affirmed, finding

28  "abundant evidence that [petitioner] was competent at trial,"

1  including examinations conducted by prosecution and defense

2  psychologists prior to trial, and the failure of defense counsel

3  and the trial court to "even hint[] that [petitioner] was

4  incompetent" at the time of trial. Id. at 1167.

5      In reaching this conclusion, the Boyde panel relied heavily

6  on Williams v. Woodford, 384 F.3d 567 (9th Cir. 2004) for the

7  following propositions:

8      • "In deciding [a] claim of actual incompetence, we may

9         consider facts and evidence that were not available to

10        the trial court before and during trial." Id. at 608.

11     • "[W]e disfavor retrospective determinations of

12        incompetence, and give considerable weight to the lack of

13        contemporaneous evidence of a petitioner's incompetence

14        to stand trial." Id.

15     Petitioner is correct that "[n]one of the three cases

16  [described above] involved a Rule 702 challenge to a psychiatrist

17  who offered testimony regarding a retrospective competence

18  determination and had testified regarding the reliability of her

19  methodology [and n]one of the cases even cited Rule 702."

20  (Request 16.) Nevertheless, the cases are apt for the proposition

21  for which they are cited: that "the Court of Appeals for the

22  Ninth Circuit recognizes that experts may make a retrospective

23  competency determination based on data like that used by

24  Dr. Jones." (Order 7.) Odle provides that "retrospective

25  competency hearings may be held when the record contains

26  sufficient information upon which to base a reasonable

27  psychiatric judgment." 238 F.3d at 1089-90. Dr. Jones, here,

28  offers his opinion (i.e., his "psychiatric judgment") regarding

petitioner's competence, based on a review of the documents described in pages 5-6 of the Order (*i.e.*, the "record"). As these documents are of the same types which the Odle panel held could be considered in a "fair" retrospective competency hearing, Dr. Jones's reliance on them was neither clearly erroneous nor contrary to law.

The question, then, is whether Dr. Jones's conclusion that petitioner was competent at the penalty phase, despite the withdrawal of anti-anxiety medication, was "the product of reliable principles and methods," Fed. R. Evid. 702(c), and whether Dr. Jones "reliably applied the principles and methods to the facts of the case," Fed. R. Evid. 702(d). To reach his conclusion, Dr. Jones spent the "vast bulk" of 18 hours in "case document review" of the documents described in pages 5-6 of the Order. (Reese Jones Declaration ¶ 42; Reese Jones Deposition 27:20-25.) He reached a different conclusion regarding petitioner's competence at trial than did Dr. Peal, a psychiatrist who had evaluated and treated petitioner, and testified at trial. According to Dr. Jones, this was because he placed greater weight on "what he [Dr. Jones] could learn about [petitioner's] mental state and behavior actually during the trial proceedings" (which he also described as "actual behaviors, examples of memory impairment, et cetera") than did Dr. Peal, whom Dr. Jones claimed emphasized petitioner's medical history. (Reese Jones Declaration ¶¶ 11-13; Reese Jones Deposition 33:21-34:3.) Dr. Jones also testified that he "disagreed with [Dr. Peal's] undue reliance on historical data rather than actual behavior during the period of trial . . . . It was just an

24

1   approach that I believe is not as informative in answering the

2   issue of how does someone think and behave and reason at that

3   time." (Reese Jones Deposition 71:23-72:7.) Ultimately, Dr. Jones

4   concluded that petitioner was competent despite withdrawal of

5   anti-anxiety medications.

6       In Odle, 238 F.3d at 1089-90, the Ninth Circuit made clear

7   that lower courts may conduct retrospective competency hearings

8   based on historical data. It also found that psychiatrists are

9   permitted to review records, of the sort Dr. Jones relied upon

10  here, in order to make findings regarding a habeas petitioner's

11  past competence. It logically follows from these holdings that a

12  methodology in which a psychiatrist reviews the approved types of

13  records and opines retrospectively as to an individual's

14  competency is at least potentially "reliable," as that term is

15  used in Rule 702(c) and (d).

16      Dr. Jones testified that, in the course of his review of the

17  pertinent records, he chose to give greater credence to

18  information regarding petitioner's mental state during the trial

19  than to petitioner's prior medical history, and that this

20  information led him to conclude that petitioner was competent. It

21  appears to the court that Dr. Jones used a rational process, one

22  that is susceptible to attack on cross-examination, as well as

23  rebuttal by petitioner's own experts, if any. It is not "opinion

24  evidence that is connected to existing data only by the *ipse*

25  *dixit* of the expert." Joiner, 522 U.S. at 146. Particularly in

26  light of Odle, 238 F.3d at 1089-90, the Magistrate Judge's

27  admission of Dr. Jones's testimony was therefore neither clearly

28

1   erroneous nor contrary to the law set forth in Rule 702(c) and

2   (d).

### C. Comments regarding absence of jury confusion

3   The Order concludes with the following observation:

> Many cases cited by petitioner involve
> decisions by trial judges about what juries
> may or may not hear. There is no issue of
> jury confusion in an evidentiary hearing in a
> federal habeas corpus case. This court had
> and will have the opportunity at each step of
> the way – during the hearing, in reading the
> transcripts, and in considering the parties'
> briefs – to determine just what parts, if
> any, of Dr. Jones' testimony survived
> petitioner's counsel's thorough cross-
> examination so as to support respondent's
> arguments that petitioner was competent to
> consult with his attorneys during the first
> day of the penalty phase and that
> petitioner's counsel was not ineffective for
> failing to investigate and present evidence
> that petitioner lacked the mental state
> necessary for first degree murder. (Order 8-
> 9.)

Petitioner argues that this passage is contrary to law,

contending that the Magistrate Judge therein finds Rule 702

inapplicable to bench trials. Petitioner writes, "Rule 702 is not

concerned solely with keeping unreliable expert testimony away

from juries. It is concerned with keeping unreliable expert

testimony out of the record of federal proceedings." (Request

18.)

Petitioner misconstrues the Order. The Magistrate Judge did

not find here that Rule 702's requirements are lessened when a

judge, rather than a jury, is to hear the proffered expert

testimony. Rather, the quoted passage indicates that the

Magistrate Judge, having found the testimony admissible under

1  Rule 702, will grant it precisely the weight that it deserves.

2  Similar statements, such as "[Dr. Jones'] capacity is not

3  definitive; and it may not even be particularly helpful depending

4  on the entire record relevant to claim 25" (Order 4-5) and

5  "[t]hat Dr. Jones' testimony might not be particularly credible

6  or persuasive after cross-examination does not require this court

7  to exclude it" (Order 8), recur throughout the Order. The court

8  interprets them not as a weakening of Rule 702's requirements,

9  but as an assurance that, having been found admissible,

10  Dr. Jones's opinions will be given precisely the weight that they

11  deserve. Accordingly, petitioner's argument is unavailing.

12  **IV. CONCLUSION**

13       For the reasons set forth above, petitioner's Request for

14  Reconsideration (ECF No. 532) is DENIED.

15       IT IS SO ORDERED.

16       DATED:  August 27, 2014.

17

18

19

20                              LAWRENCE K. KARLTON

21                              SENIOR JUDGE
                                UNITED STATES DISTRICT COURT
22

23

24

25

26

27

28

                                27