UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jerry Grant Frye,<br><br>Petitioner,<br><br>v.<br><br>Warden, San Quentin State Prison, et al.,<br><br>Respondents. | No. 2:99-cv-00628-KJM-CKD<br><br>ORDER |

In 2000, petitioner Jeremy Grant Frye, a state prisoner under sentence of death, filed the petition for writ of habeas corpus pending before this court. Pet. for Writ of Habeas Corpus, ECF No. 17. In late 2021, this court ordered petitioner and respondent San Quentin State Prison to show cause why this action should not be referred to a mandatory settlement conference before another judge of this court. *See generally* Order to Show Cause (OSC) (December 2, 2021), ECF No. 707. The court's order responded to issues raised in petitioner's November 2021 motions to (1) set aside the judgment, dismiss the case, and order petitioner's immediate release, ECF No. 704, (2) amend the second amended petition for writ of habeas corpus, specifically petitioner's ineffective assistance of counsel claim, ECF No. 705, and (3) withdraw specified exhibits, ECF No. 706. While petitioner was open to settlement discussions, *see generally* Pet'r Resp. to OSC, ECF No. 710, respondent was not, *see generally* Resp't Resp. to OSC, ECF No. 709.

In his response to the order, petitioner asked the court in the alternative to consider addressing certain findings and recommendations issued by the magistrate judge regarding petitioner's unconstitutional shackling claim. Pet'r Resp. to OSC at 3.[1] This echoes the observation petitioner made in his motion to set aside the judgment or dismiss the case: "Short of a complete reversal presently by this [c]ourt based on unconstitutional shackling at guilt and penalty phases of the trial (Claim 44), there is no longer a process in place in this district that could in fact afford [petitioner] an opportunity for final resolution of his claims within any measure of a reasonable time period." ECF No. 704 ¶ 42. The petitioner then asked the court to direct entry of a final judgment on this specific claim, as allowed under Federal Rule of Civil Procedure 54(b). Pet'r Resp. to OSC at 3. The petitioner recognized that a ruling by the court on this discrete issue would preclude consideration of the other issues in the petition pending appeal. *Id.* Having considered the petitioner's request and applicable law, the court agrees that addressing petitioner's unconstitutional shackling claim advances both judicial administrative interests and acknowledges the equities involved.

For the reasons below, the court **declines to adopt the magistrate judge's finding that there was no prejudicial error in jurors' seeing petitioner shackled during the guilt or sentencing phases of the trial and the magistrate judge's corresponding recommendation that these claims be denied. The court therefore grants a writ of habeas corpus on these grounds alone. The court denies petitioner's motion to set aside the judgment and order release (ECF No. 704), but with leave to amend.**

## I.   BACKGROUND

In 1988, petitioner was convicted of two counts of first-degree murder, first-degree robbery, residential burglary, and unlawful driving and taking of a vehicle. Findings and Recommendations (F&R) at 8, ECF No. 658. The jury deliberated for three days before returning a guilty verdict. Obj. to F&R at 98, ECF No. 692. At the end of the penalty phase, the jury deliberated for approximately two days before sentencing petitioner to death. Reporter's

---

[1] Citations to page(s) in this document refer to page numbers applied to the upper right of each page by the court's CM/ECF system.

Transcript (R.T.) of Proceedings on Trial (Aug. 5, 1988–Aug. 8, 1988) at 9748–9786. The California Supreme Court affirmed petitioner's conviction and sentence a decade later. *See People v. Frye*, 18 Cal. 4th 894 (1998). Shortly thereafter, petitioner initiated the instant habeas action in this court by filing a request for appointment of counsel. ECF No. 1. After the Supreme Court of California summarily denied petitioner's first and second state habeas petitions, *see Frye (Jerry Grant) on H.C.,* Case No. S062455 (Oct. 14, 1998) and *Frye (Jerry Grant) on H.C.,* Case No. S087755 (Jan. 24, 2001), he filed the operative second amended petition. Second Am. Pet., ECF No. 104.

In 2006, the undersigned, then sitting as the assigned magistrate judge on this case, found an evidentiary hearing was necessary on petitioner's shackling claim because the parties disputed whether jurors saw petitioner shackled. *Frye v. Stokes*, No. 99628, 2006 U.S. Dist. LEXIS 97368, at *92–93 (E.D. Cal. Dec. 1, 2006). During the prior state habeas proceeding, petitioner presented declarations of two jurors, Juror Silvey and Juror Canale, who recalled seeing the petitioner shackled. F&R at 115 (citing 2001 State Habeas Proceedings, Ex. 101, ¶ 9, Ex. 3 to Inf. Reply, ¶ 3). Respondent's investigator also interviewed Juror Silvey and provided the state court with a second declaration. *Id.* at 115–116 (citing 2001 State Habeas Proceedings, Inf. Resp., Ex. E, ¶¶ 7, 8). At the 2008 evidentiary hearing in this court on the shackling claim, Jurors Silvey and Canale testified on direct and cross examination. *See generally* R.T. (Aug. 19, 2008), ECF No. 351. The evidence elicited at the hearing confirmed both jurors' prior declarations, with some variation and additional detail, as reviewed below.

In her 2000 declaration, Juror Silvey stated she saw petitioner shackled at the feet, wrists and waist. F&R at 115 (citing 2 SH, Ex. 101, ¶ 9). She recalls the defense asking the court to remove the shackles "so the jury would not form an opinion." *Id.* She noted the "shackles gave [petitioner] the flavor of danger." *Id.* When respondent's investigator interviewed Juror Silvey, she elaborated that she saw petitioner "shackled in the courtroom during jury selection." *Id.* (citing 2 SH, Inf. Resp., Ex. E, ¶¶ 7,8). She said she "believe[d] the entire jury saw him" and elaborated on the defense attorney's request to remove the shackles. *Id.* When defense attorney argued that the shackles "make [defendant] appear more dangerous than he really is," the judge

3

ordered petitioner unshackled and "told the jury not to have preconceived ideas about [petitioner's] guilt or innocence." *Id.* Juror Silvey also told the investigator, "At the beginning of jury selection, I saw [petitioner] sitting shackled on a bench near the entrance to the courtroom . . . [he] should not have been there. I believe the viewing was staged to make [petitioner] appear more human to the jury." *Id.* at 115–116 (2 SH, Inf. Resp., Ex. E, ¶¶ 7,8).

At the 2008 evidentiary hearing in this court, Juror Silvey testified she saw petitioner's hands shackled to his waist, and she confirmed she had previously declared she saw his feet shackled. R.T. (Aug. 19, 2008) at 79:18–22, 83:3–7. She recalled seeing petitioner shackled on a bench in the hallway outside of the courtroom. *Id.* at 83:9–18. She saw petitioner there "[a]lmost every morning," and noted that "all of the jurors" "had to pass by him in order to get into the courtroom." *Id.* at 84:12–22. She later clarified that while she saw him there most mornings, he was not always shackled. *Id.* at 99:8–12. She could not recall how many times she saw him shackled on the bench, but it was more than once. *Id.* at 84:23–85:2. She confirmed seeing him shackled once in the courtroom after the judge had called the court to order, prior to petitioner's attorney asking the court to remove the shackles, and while she was "seated in the jury box" with all twelve jurors present. *Id.* at 104:21–23; 83:19–84:8, 96:16–25; 100:11–101:2. However, she could not recall if this was before or after she was sworn in as juror. *Id.* at 100:15–18. Juror Silvey reiterated the shackles "presented [petitioner with] just a touch of danger." *Id.* at 85:6–8. At some point during the presentation of evidence, while the jurors were gathered in the jury room, another juror mentioned petitioner's shackles. *Id.* at 101:13–102:9.

In Juror Canale's 2000 declaration, she wrote, "During the trial, I saw [petitioner] in shackles – hands and feet – but I do not remember how many times this occurred or whether this occurred inside the courtroom or in the hallway." FAC at 115 (citing 2 SH, Ex. 3 to Inf. Reply, ¶ 3). At the evidentiary hearing before this court, Juror Canale confirmed she saw petitioner shackled by his feet and wrists. R.T. (Aug. 19, 2008) at 69:16–70:2. She recalled his walk or gait being "different" because of his shackles, and that he was "outside the courthouse" near a partially covered side-entrance wearing an orange jumpsuit when she saw him shackled. *Id.* at 70:3–19. She could not remember if she saw him shackled inside the courtroom or in the

hallway. *Id.* at 70:25–71:5. Nor could she recall how many times she saw him shackled, but it may have been more than once. *Id.* at 71:6–10. She did not discuss the shackling with other jurors, she did not recall the judge or petitioner's attorneys addressing shackling inside the courtroom, and she did not recall anyone mentioning petitioner's shackles during deliberations. *Id*. at 71:23–72:10, 74:20–22.

Based on the declarations and the record established during the evidentiary hearing, the currently-assigned magistrate judge found "that jurors saw petitioner shackled once inside the courtroom at the beginning of trial and at least once in the hallway outside the courtroom." F&R at 119. She also found "that at least one juror saw petitioner shackled and in a prison jumpsuit outside the courthouse." *Id.* She determined that when seen inside the courthouse, petitioner's "hands were shackled and connected to a belly chain." *Id.* She noted the discrepancy between Juror Silvey's declaration and testimony, with only the former stating unequivocally that petitioner's feet were shackled. *Id.* at 119–120 & n.55. The magistrate judge concluded, "Whether the shackling included petitioner's feet or not, the court's analysis of this claim is the same." *Id.*

In the two years following the evidentiary hearing, the parties conducted depositions and prepared for additional portions of the evidentiary hearing, unrelated to shackling, authorized by the court. *Id.* at 1. When the U.S. Supreme Court rendered a decision in 2011 changing the federal courts' analysis of habeas corpus petitions under section 2254, the magistrate judge ordered additional briefing on the application of 28 U.S.C. § 2254(d) to each claim, including petitioner's shackling claim. *Id.* at 1–2; *see Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). In 2015, the magistrate judge issued her findings and recommended denying petitioner's shackling claim on the merits. *Id.* Petitioner objected. *See generally* Obj. to F&R. Respondent did not respond to the objections.

**II.     DISCUSSION**

   **A.     Application of Rule 54(b)**

The court first addresses the appropriateness of directing an entry of final judgment on petitioner's shackling claim alone. *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir.

5

1981) ("The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order.").

### 1. Legal Standard

Federal Rule of Civil Procedure 54 provides, in part, that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *see also Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). To be a "final judgment," a judgment must be "a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss–Wright Corp.*, 446 U.S. at 7 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). The "factual and legal issues involved" in the claim on which a party seeks final judgment must be "severable" from the pending claims. *Id.* at 9. "In deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved." *Id.* at 8. The court's "discretion is to be exercised 'in the interest of sound judicial administration.'" *Id.* (quoting *Sears*, 351 U.S. at 437).

### 2. Analysis

Petitioner's unconstitutional shackling claim stems from his allegation that jurors saw petitioner shackled during trial. F&R at 114. To establish his entitlement to relief on this claim, petitioner must show he was shackled in the presence of the jury, the jury saw him shackled and the shackles were not justified by state interests. *Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002). The court must then determine whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quotations omitted). While the Ninth Circuit's prejudice analysis requires the court to consider some facts relevant to petitioner's other claims,[2] partially overlapping facts do not

---

[2] For example, "the strength of the state's evidence against the defendant," *Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008), is also relevant to petitioner's ineffective assistance of counsel claim, *see* F&R at 29, 62.

preclude a court from directing final judgment a single claim. *See Wood v. GCC Bend, LLC*, 422 F.3d 873, 882 & n.5 (9th Cir. 2005). Despite some overlap of factual and legal issues relevant to petitioner's shackling claim with the issue relevant to petitioner's other pending claims, the court finds the claims are not so interrelated that they will inevitably result in "piecemeal appeals . . . which should be reviewed only as single units." *Curtiss-Wright Corp.* 446 U.S. at 10.

Directing final judgment on the shackling claim could prove dispositive of petitioner's challenge to his sentence to death, thus reducing the number of claims this court ultimately would need to resolve. If the Ninth Circuit finds petitioner's shackling was prejudicial at a phase of the trial, it would provide petitioner habeas relief and entitle him to retrial of that phase.[3] The Ninth Circuit has previously approved of a district court's use of Rule 54(b) in the capital habeas context where it "makes practical sense and ensures the most efficient use of the court's resources." *See Stanley v. Cullen*, 633 F.3d 852, 865 (9th Cir. 2011) (quotations omitted) (approving district court's grant of relief on competency juror bias claim). Even if a district court's subsequent grant of relief on another habeas claim might render any appeal irrelevant, "this does not make the claims so interrelated that they must be adjudicated together." *Id.*

The equities also weigh heavily in favor of directing final judgment on petitioner's shackling claim. Petitioner's habeas claims have been before this court for approximately two decades. *See generally* Docket. Even more time has passed since the petitioner's trial in state court. F&R at 8. As petitioner observed in his motion to set aside the judgment or dismiss the case, none of his claims have been finally decided by a district court judge. ECF No. 704 ¶ 2. Issuing a final decision on each of petitioner's pending claims would unquestionably take this

---

[3] The court acknowledges petitioner's response to the court's Order to Show Cause argues that "the passage of close to four decades since the onset of proceedings in this case renders retrial a virtual impossibility and cries out for equitable relief in the form of an unconditional reversal barring retrial." Pet'r Resp. to OSC at 4. The court of course also recognizes the "[p]assage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible." *Engle v. Isaac*, 456 U.S. 107, 127–28 (1982). However, the court does not address this argument here as it is not relevant to the application of Rule 54(b) or petitioner's shackling claim, and is thus not properly before this court at this time.

court substantially more time than deciding the shackling claim alone now, as would addressing his motion to set aside the judgment or dismiss the case. The lapse of more time could further jeopardize any retrial by making it even more difficult for petitioner and the state to present relevant evidence. Accordingly, the court concludes entry of final judgment on petitioner's unconstitutional shackling claim under Rule 54(b) is appropriate.

### B.  Unconstitutional Shackling (Claim 44)

The court first addresses petitioner's claim of unconstitutional shackling, which is before this court on petitioner's objections to the magistrate judge's amended findings and recommendations issued January 22, 2015. *See generally* Obj. to F&R.

#### 1.  Legal Standard

The court presumes that any findings of fact are correct, as neither party contested the proposed findings of fact. *See Orand v. United States*, 602 F.2d 207, 208 (9th Cir. 1979). The magistrate judge's conclusions of law are reviewed *de novo*. *See Robbins v. Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007) ("[D]eterminations of law by the magistrate judge are reviewed de novo by both the district court and [the appellate] court . . . ."); *see also* 28 U.S.C. § 636(b)(1)(C). Having reviewed the file, the court finds the magistrate judge's legal conclusions as to petitioner's shackling claim at the guilt and sentencing phases of the trial unsupported by proper analysis of the record.

The Fifth and Fourteenth Amendments bar the use of shackles visible to the jury unless a trial court determines the physical restraints are justified by a state interest. *Deck v. Missouri*, 544 U.S. 622, 622 (2005); *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999) ("Because visible shackling during trial is so likely to cause a defendant prejudice, it is permitted only when justified by an essential state interest specific to each trial."). As noted above, to state an unconstitutional shackling claim, petitioner must show he was shackled in the presence of the jury, the jury saw him shackled, and the shackles were not justified by state interests. *Ghent*, 279 F.3d at 1132. While "shackling during trial carries a high risk of prejudice," *Dyas v. Poole*, 317 F.3d 934, 937 (9th Cir. 2003), a jury's "brief," "infrequent," or "inadvertent" glimpse of petitioner shackled in the hallway or while entering the courtroom "is not inherently or

presumptively prejudicial . . . ." *Ghent*, 279 F.3d at 1133.  To determine whether the error is prejudicial and had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 638 (quotations omitted), the Ninth Circuit considers "[1] the appearance and visibility of the restraining device, [2] the nature of the crime with which the defendant was charged and [3] the strength of the state's evidence against the defendant." *Larson*, 515 F.3d at 1064 (citing *Dyas* 317 F.3d at 937).  "[I]f even one juror is biased by the sight of the shackles, prejudice can result." *Dyas*, 317 F.3d at 937.

Prior to reviewing petitioner's claims, the magistrate judge considered the applicability of the standards established in the Anti-terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254.  F&R at 11, 118.  Under section 2254(d), where a state court resolved a federal constitutional claim on the merits, the habeas petitioner in federal court may not succeed on that claim unless the state court ruling was contrary to "clearly established" federal law or "based on an unreasonable determination of the facts in light of the evidence presented . . . ."[4] Two years after the magistrate judge issued her findings and recommendations here, the Ninth Circuit, quoting the Supreme Court, observed that "[t]he *Brecht* standard is so stringent that it 'subsumes' the AEDPA/*Chapman* standard for review of a state court determination of the harmlessness of a constitutional violation." *Hall v. Haws*, 861 F.3d 977, 992 (9th Cir. 2017) (quoting *Davis v. Ayala*, 576 U.S. 257, 268 (2015) and *Fry v. Pliler*, 551 U.S. 112, 120 (2007)).  The Ninth Circuit thus concluded it "need not apply both a *Brecht* review and an AEDPA/*Chapman* review because 'a determination that the error resulted in 'actual prejudice' under *Brecht* necessarily means that the state court's harmless error determination was not merely incorrect, but objectively unreasonable.'" *Id*. (quoting *Deck*, 814 F.3d at 985 (brackets and citations omitted)).

---

[4] Title 28 U.S.C. § 2254(d) provides:
"(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The Supreme Court recently resolved the question of what it meant when it stated in *Davis v. Ayala* that *Brecht* "subsumes" AEDPA. *See Brown v. Davenport*, 142 S. Ct. 1510, 1527 (2022). The Court held that "when a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant habeas relief without applying both the test [] outlined in *Brecht* and the one Congress prescribed in AEDPA . . . ." *Id.* at 1517. As the magistrate judge observed in applying AEDPA, because "there is little question that petitioner stated a prima facie shackling claim," the "only issue . . . upon which the California Supreme Court could reasonably have denied petitioner's claim is harmless error." F&R at 118. However, the required harmless error analysis relies on factual determinations not developed by the state courts.[5] *Id.* Because the state appellate and supreme courts reached the merits "without providing reasoning" for the federal court to review, *Larson*, 515 F.3d at 1062, this court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." *Brazzel v. Washington*, 491 F.3d 976, 981 (9th Cir. 2007) (internal quotations omitted); *see also Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir. 2004) (if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2).).

## 2. Analysis

The magistrate judge found that "jurors saw petitioner shackled once inside the courtroom at the beginning of trial and at least once in the hallway outside the courtroom." F&R at 119–120. She also found "that at least one juror saw petitioner shackled and in a prison jumpsuit outside the courthouse. When he was seen inside the courthouse, petitioner's hands were shackled and connected to a belly chain. When he was seen outside the courthouse, petitioner's feet were shackled as well." *Id.* Apart from when jurors saw petitioner shackled at trial, the record does not make clear when other instances occurred. It is undisputed that the trial court judge found

---

[5] The sole evidentiary hearing on the shackling claim took place in this court. F&R at 118; *see also* R.T. (Aug. 19, 2008).

shackling unnecessary, and during sessions of trial defendant was not shackled. *Id.* at 115. Taking into account the totality of the record, the magistrate judge properly concluded petitioner states a prima facie shackling claim under *Ghent*. 279 F.3d at 1132. The court thus first addresses whether jurors' seeing petitioner's out-of-court shackling may have been prejudicial before turning to determine whether petitioner's shackling prejudiced petitioner at the guilt or sentencing phases of the trial. *Brecht*, 507 U.S. at 638.

In *Ghent*, the district court found "a few jurors at most" glimpsed petitioner in restraints "as he walked in the hallway and stood at the doorway of the courtroom to have his restraints removed." 279 F.3d at 1132–33. The Ninth Circuit agreed with the district court that the jurors' "brief or inadvertent" and "infrequent" viewing of petitioner shackled was "not inherently or presumptively prejudicial . . . ." *Id.* at 1133. The court also found petitioner had not "made a sufficient showing of actual prejudice" because the crux of petitioner's argument relied on an analogy to *Rhoden v. Rowland*, which was inapposite because petitioner "was shackled in the open courtroom during his entire trial." *Id.* at 1133 n.11 (citing *Rhoden*, 172 F.3d at 634–36). Here, in addition to petitioner Frye's being shackled at least once in the presence of jurors inside the courtroom, Juror Silvey testified petitioner was seated "almost every morning" on a bench in the hallway outside the courtroom, which all the jurors had to pass by. R.T. (Aug. 19, 2008) at 83:9–18; 84:12–22. While he was not shackled every morning, she could recall him seated there in shackles more than once. *Id.* at 99:8–12, 84:23–85:2. In addition, Juror Canale recalled seeing petitioner shackled at least once near a side entrance to the courthouse. *Id.* at 70:3–19. Because this amounts to more than a "brief or inadvertent" viewing by "a few jurors" of petitioner shackled outside the courtroom, this court concludes petitioner may have been prejudiced by his out-of-court shackling. *Cf. Ghent*, 279 F.3d at 1132–33.

To evaluate whether petitioner was prejudiced, the court applies the test for prejudice distilled in two cases following *Ghent*, *Larson v. Palmateer*, 515 F.3d at 1064, and *Dyas v. Poole*, 317 F.3d at 937. In determining whether the shackling had a "substantial and injurious effect or influence" on the jury's verdict, *Brecht*, 507 U.S. at 638, the court first considers the appearance and visibility of the restraints. *Larson*, 515 F.3d at 1064. "'[T]he greater the intensity of

shackling . . . the greater the extent of prejudice,' because elaborate physical restraints are more likely to create the appearance of the defendant's dangerousness." *Id*. (quoting *Spain v. Rushen,* 883 F.2d 712, 722 (9th Cir.1989)). "Hence, physical restraints such as a waist chain, leg irons or handcuffs may create a more prejudicial appearance than more unobtrusive forms of restraint." *Id.* In *Larson*, defendant wore a security leg brace for two of six days of trial. *Id.* The Ninth Circuit found his leg brace "not as visually obtrusive or prejudicial a restraining device as handcuffs, leg irons, waist chains or gags." *Larson,* 515 F.3d at 1064; *see also Walker v. Martel,* 709 F.3d 925, 942 (9th Cir. 2013) (observing "[n]ot all restraints are created equal" and finding a "molded-plastic brace placed on [defendant's] leg underneath his clothing was not . . . handcuffs secured to a belly chain"). The court also permitted Larson, who proceeded pro se, to move around the courtroom unencumbered for four days. *Id.* For this reason, the court concluded the prejudicial impact of the leg brace was "mitigated" because it would be apparent to jurors that defendant "was not a dangerous individual in need of constant restraint . . . ." *Id.*

Here, the magistrate judge concluded petitioner's "in-court shackling . . . was far less intrusive than that found harmless in *Larson*." F&R at 120. This court cannot so agree. Focusing on the "appearance and visibility" of the shackling, the court concludes petitioner's belly and hand shackles were more obtrusive than Laron's security leg brace. *Larson*, 515 at 1064. While petitioner was shackled in the courtroom for less time than Larson, a jury's "brief" exposure may still be prejudicial. *Wilson v. McCarthy*, 770 F.2d 1482, 1486 (9th Cir. 1985). Further distinguishing this case from *Larson*, two jurors confirmed seeing petitioner in shackles outside the courtroom at least once and perhaps almost daily. *See* R.T. (Aug. 19, 2008) at 70:3–19, 83:9–18, 84:12–85:2, 99:8–12. That two jurors recalled the shackles over a decade after the trial is evidence of the restraints' notable appearance and visibility. *Rhoden*, 172 F.3d at 637 (finding evidence of prejudice where "jurors remembered the shackles even though the hearing was six years after the trial"). Juror Silvey's recollection of another juror mentioning the shackles also supports a finding of prejudice. *Id.* The court finds the visible and "elaborate physical restraints" used on petitioner thus weigh in favor of finding the error prejudicial. *Larson*, 515 at 1064.

The court next considers the nature of the charges against defendant. Weighing the significance of the charges is straightforward: "[I]f the defendant is charged with a violent crime, then the risk of prejudice increases, because shackling 'essentially brand[s] [him] as having a violent nature.'" *Id.* (quoting *Rhoden,* 172 F.3d at 637). The Ninth Circuit has found shackling errors to be prejudicial when defendant was convicted of murder and robbery and "at least one juror saw [defendant's] shackles during the trial from the jury box." *Dyas*, 317 F.3d at 937. Likewise, the court found habeas relief warranted when defendant was charged with rape and sexual battery and "several of the jurors actually saw the shackles during the trial." *Rhoden*, 172 F.3d at 635, 637. Here, in considering the nature of the charges against petitioner, the magistrate judge, without citation to any legal authority, observed "[t]he shackling occurring outside the courtroom could not have come as any surprise to the jury" given he was charged with two capital murders. F&R at 121. The magistrate judge continued, "[s]hackling during transport of someone on trial for such violent and egregious crimes would have seemed reasonable and ordinary." *Id.* The magistrate judge did not consider binding precedent instructing this court to find the severe charges against petitioner weigh in favor of finding prejudice when petitioner is shackled in front of jurors even once. *See Dyas*, 317 F.3d at 937. For this reason, this court cannot accept the magistrate judge's conclusion on this issue.

Finally, the court considers the strength of the evidence against petitioner. "Concerns about prejudice may be mitigated . . . if the state's evidence against the defendant was 'overwhelming.'" *Larson*, 515 F.3d at 1064 (quoting *Dyas,* 317 F.3d at 937). On this point, the court agrees with the magistrate judge that the evidence at the guilt phase was "substantial." F&R at 121. The prosecution's chief witness, testifying under a grant of immunity, provided eyewitness testimony of petitioner's killing a couple, robbing their home, and stealing their vehicle to escape. *People v. Frye*, 18 Cal. 4th 894, 931 (1998), *as modified* (Sept. 23, 1998). Physical evidence introduced at trial also corroborated the chief witness's testimony, including a jacket belonging to petitioner found at the scene of the crime and the victims' automobile recovered en route to the location to which petitioner had fled. *Id.* at 966. Shortly before the murders, petitioner suggested someone might "hit" or "knock[]" victims "in the head for their

13

money" *Id.* The defense presented testimony from a forensic scientist who challenged the chief witness's version of events. *Id.* at 936. The defense also offered testimony from a psychiatrist who evaluated and treated petitioner and concluded he did not believe the chief witness's account. *Id.*

Despite the prosecution's robust evidence, the jury took three days to deliberate at the guilt phase. Obj. to F&R at 98 (citing R.T. 9331, 9372). Courts in the Ninth Circuit have found that when a jury deliberates for three or more days, the evidence may not be overwhelming. *See Dyas*, 317 F.3d at 936–37 ("the evidence against [petitioner] was not overwhelming, a fact reflected in the . . . jury's deliberations [of three and a half days]"). At the very least, the case was not open and shut. *See Rhoden*, 172 F.3d at 637 (jurors' nine hours of deliberation over three days suggests jurors "did not find the case to be clear-cut"); *Gibson v. Clanon*, 633 F.2d 851, 855 n.8 (9th Cir. 1980) ("it does not seem possible that the jury would have deliberated nine hours over several days if the jurors did not have serious questions as to the credibility of the eyewitnesses"). In addition to assigning weight to the length of jury deliberations, some courts have observed that a jury's request for exhibits or to re-read instructions "lends credence to the view that the case was a close and difficult one." *Osborne v. United States*, 351 F.2d 111, 118 (8th Cir. 1965); *see also Johnson v. Superintendent Fayette SCI*, 949 F.3d 791, 805 (3d Cir. 2020) (jury's request for "guidance," coupled with length of deliberations, indicates "case was a close call" for the jury). Here, while deliberating at the guilt phase of trial, the jury made daily requests for transcripts and well over a dozen exhibits and other evidence. Obj. to F&R at 98–99 (citing RT). Although a close call, the court disagrees with the magistrate judge that the strength of the evidence at the guilt phase was sufficiently robust to mitigate the prejudice caused by petitioner's shackling.

The magistrate judge also found that any effect on the penalty phase would have been insubstantial. F&R at 121. Here as well, the court disagrees. At the penalty phase, a jury must determine "the extent to which [defendant] continues to be dangerous . . . ." *Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir. 1995). Thus, "physical restraints may create the impression in the minds of the jury that the court believes the defendant is a particularly dangerous and violent

14

person." *Id.* At the penalty phase, the prosecution emphasized the circumstances of the crimes and offered documentary evidence of defendant's prior felony conviction for sexual assault. *People v. Frye*, 18 Cal. 4th at 937. Although the record is unclear regarding when the jury members saw petitioner shackled, Juror Silvey's statement ten years after the trial that petitioner's shackling gave him the "flavor of danger" indicates any prejudice from viewing petitioner shackled lasted the duration of the trial. F&R at 115. The concreteness of this memory is inconsistent with the magistrate judge's decision to give weight to the "many months" that passed between jury members' seeing petitioner shackled in court and the jury's deliberation at the penalty phase. *Id.* at 121.

At the penalty phase, the jury deliberated for approximately two days before sentencing petitioner to the death. *See* R.T. of Proceedings on Trial (Aug. 5, 1988–Aug. 8, 1988) at 9748–9786. During that time, the jury also requested additional information, including the "definition of reasonable doubt from instruction of guilt phase," two exhibits, and the transcript of defendant's statement at trial. *Id.* at 9780. As with the guilt phase, these facts indicate the decision to sentence petitioner to death may have been a close call. Finally, the magistrate judge found that "serious flaws" in the penalty phase "made it perhaps a closer case than the guilt phase decision . . . ." F&R at 115. The court agrees and, given its conclusions above, finds the shackling also prejudiced petitioner during the penalty phase.

### C. Petitioner's Motion to Set Aside the Judgment, Dismiss the Case, and Order Petitioner's Immediate Release

Petitioner also has moved to set aside the judgment, dismiss the case, and order petitioner's immediate release. *See generally* ECF No. 704. Because the petitioner himself suggested deciding petitioner's shackling claim in lieu of resolving the motion to set aside the judgment, the court declines to reach the merits at this time. Pet'r Resp. to OSC at 3. In light of the disposition of this order, the court denies the motion without prejudice to its renewal, as appropriate, at a later stage of these proceedings.

### III. CONCLUSION

The court **declines to adopt the magistrate judge's finding that there was no prejudicial error in jurors' seeing petitioner shackled during the guilt or sentencing phases of the trial and the corresponding recommendation that these claims be denied**. Accordingly, the court **grants** a writ of habeas corpus on these grounds as to the guilt and penalty phases unless, within a reasonable time and not later than ninety days from the date of this order, the State seeks a new trial or appeals this order. *See Sechrest v. Ignacio*, 549 F.3d 789, 818 (9th Circ. 2008).

This order resolves ECF No. 704 and Claim 44 in ECF No. 658.

IT IS SO ORDERED.

DATED: May 18, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE