1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Jerry Grant Frye,                          No. 2:99-cv-0628 KJM CKD

12                    Petitioner,               ORDER

13        v.

14   Warden, San Quentin Prison,

15                    Respondent.

16

17          In 2006, the undersigned—then acting as the assigned magistrate judge on the case—ruled

18   ten of petitioner Jerry Grant Frye's 45 claims for relief warranted an evidentiary hearing (claims

19   2, 3, 4, 5, 7, 25, 28, 29, 42, 44).  In 2008, the undersigned then held an evidentiary hearing on

20   claims 42 and 44.  Two years later, Frye moved for an evidentiary hearing on claim 37.  While

21   the court's resolution of the merits of claims 42 and 44 and the motion for evidentiary hearing on

22   claim 37 were pending, the Supreme Court decided *Cullen v. Pinholster*, 563 U.S. 170 (2011).

23   *Pinholster* potentially upended the court's 2006 grant of an evidentiary hearing, as it limited the

24   scope of federal habeas review under 28 U.S.C. § 2254(d)(1) in the first instance to the record

25   before the state court that adjudicated the claims on the merits in the first instance.  In 2011, after

26   the undersigned was appointed as a district judge, a successor magistrate judge requested briefing

27   on the effect of *Pinholster*'s holding "on both the existing fact-finding and on further fact-finding

1  in this proceeding." Order (May 3, 2011) at 2, ECF No. 584.[1]  In 2015, the next successor

2  magistrate judge then issued amended Findings and Recommendations based on the supplemental

3  briefing the parties provided.  The magistrate judge now recommends denying an evidentiary

4  hearing on claims 2, 3, 4, 5, 7, 25 and 37 and granting an evidentiary hearing on claims 28 and

5  29.  The magistrate judge also recommends the court find the evidentiary hearing on claims 42

6  and 44 was warranted but recommends denying those claims on the merits.  Both Frye and

7  California have submitted objections to the magistrate judge's findings and recommendations and

8  each party also has submitted responses to the opposing party's objections.

9       The court presumes the magistrate judge's findings of fact are correct.  *See Orand v.*

10 *United States*, 602 F.2d 207, 208 (9th Cir. 1979).  In accordance with the provisions of 28 U.S.C.

11 § 636(b)(1)(C) and Local Rule 304, the court has conducted a *de novo* review of the case.  *See,*

12 *e.g.*, *Barnett v. Wong,* No. 99-2416, 2010 WL 653754, at *1 (E.D. Cal. Feb. 19, 2010) (applying

13 Local Rule 304 to AEDPA cases); *Hernandez v. Lewis*, No. 12-1661, 2017 WL 2954232, at *1

14 (E.D. Cal. July 11, 2017) (same).  Having reviewed the file, the court, as described more fully

15 below, adopts the magistrate judge's findings and recommendations in part.

16 **I.     BACKGROUND**

17      In 1988 Frye was convicted of two counts of first-degree murder for killing Robert Lee

18 Brandt and Lucille Jane Brandt.  He also was convicted of first-degree robbery, residential

19 burglary, and the unlawful driving and taking of a vehicle.  *See* Reporter's Transcript of

20 Proceedings on Trial (RT) (May 9, 1988) 9371–9379.  The jury also found special allegations to

21 be true: Frye was armed with a shotgun during both murders, he used the shotgun during both

22 murders, he committed multiple murders, and he committed the murders in the course of

23 committing a robbery and in the course of committing a burglary.  *See id*.  The same jury then

24 returned a death sentence verdict at the end of the penalty phase of the proceedings.  *See id.*

25 9786–9788 (Aug. 5, 1988–Aug. 8, 1988).  The California Supreme Court affirmed Frye's

26 conviction and sentence.  *See People v. Frye*, 18 Cal. 4th 894 (1998).  The California Supreme

---

[1] Pages cited here are those applied at the top right by the CM/ECF system with the exception of state court and state appellate transcripts.

1    Court then summarily denied Frye's first and second state habeas petitions.  *See Frye (Jerry*

2    *Grant) on H.C.*, No. S062455 (Oct. 14, 1998) and *Frye (Jerry Grant) on H.C.*, No. S087755

3    (Jan. 24, 2001).  Frye then filed his operative petition for habeas corpus with this court.  *See* 2d.

4    Am. Pet., ECF No. 104.

5         On July 19, 2004, Frye filed his first motion for an evidentiary hearing.  *See* ECF No. 162.

6    As noted above, the undersigned, as the assigned magistrate judge, granted the motion in part on

7    the following claims:

8         • Claim 2: Frye's trial counsel failed to investigate and present evidence that Frye

9              lacked the mental state necessary to commit felony murder.  *See* Order (Dec. 1,

10             2006) at 33–36, ECF No. 214.

11        • Claim 3: Frye's counsel provided ineffective assistance of counsel at the guilt

12             phase of the trial, including promising witnesses would testify and then not calling

13             them, failing to have a coherent trial strategy, and engaging in insulting behavior.

14             *See id.* at 24–26.

15        • Part of Claim 7: Frye's counsel was ineffective for failing to object to the

16             prosecutor's vouching for its star eyewitness's credibility.  *See id.* at 26–32.

17        • Claim 25: Jailers interfered with Frye's right to counsel.  *See id.* at 43–45.

18        • Claims 28 and 29: Frye's counsel failed to investigate and present mental health

19             evidence, evidence of traumatic events in Frye's childhood and the effects of

20             Frye's alcohol dependence, as well as allow Frye to give an allocution before the

21             jury at the penalty phase of the trial.  *See id.* at 40–43.

22        • Part of Claim 42: Juror Fairfield sought the advice of her minister on the death

23             penalty.  *See id.* at 45–49.

24        • Claim 44: Frye's due process rights were violated because jurors saw him

25             shackled.  *See id.* at 49–50.

26        The undersigned also allowed Frye to brief claims 4 and 5 as background information for

27    the adjudication of claim 2 but otherwise denied an evidentiary hearing for those two additional

28    claims.  *See id.* at 22–24.  In 2008, the court held the evidentiary hearing on claims 42 and 44 and

3

1    the parties also briefed the merits of those claims. *See* ECF Nos. 396, 421, 437, 446. The parties

2    then conducted depositions on the other eight claims between 2008 and 2010. Further, Frye also

3    moved for the court to grant an evidentiary hearing on claim 37: that "the California death penalty

4    scheme in effect in 1985 was not structured so as to prevent the penalty from being administered

5    in an arbitrary and unpredictable fashion." *See* Mot. Misc. Relief at 2, ECF No. 549 (quoting 2d

6    Am. Pet. ¶ 817). As noted, in February 2011 the case was reassigned to another magistrate judge.

7    *See* Am. Order (Feb. 18, 2011), ECF No. 574.

8         In 2011, the Supreme Court issued its opinion in *Cullen v. Pinholster*, holding federal

9    courts' habeas review under 28 U.S.C. § 2254(d)(1) of a state court's decision on the merits is

10   limited to the record that was before the state court. *See* 563 U.S. at 180–83. As a consequence

11   of this opinion, the magistrate judge assigned at the time directed Frye to brief two questions:

12   (1) whether the court may consider evidence introduced for the first time in the federal

13   proceeding when reviewing a state court decision under 28 U.S.C. § 2254(d)(2); and (2) with

14   respect to the claims for which Frye was granted an evidentiary hearing and with respect to claim

15   37, whether the California Supreme Court's decision meets the standards set out in either

16   28 U.S.C. § 2254(d)(1) or (2) without reference to any evidence or facts developed in the federal

17   proceeding. *See* Order (May 3, 2011) at 2, ECF No. 584. The magistrate judge required

18   California to brief (1) whether evidence presented at a federal evidentiary hearing may be

19   considered by a federal court in its review under sections 2254(d)(1) and 2254(d)(2); (2) whether

20   arguments made by Frye in briefing dating from 2006 showed he had already satisfied the

21   requirements of § 2254(d)(2) for each claim on which the court had granted an evidentiary

22   hearing; and (3) its response to Frye's arguments made in his briefing. *See id.* at 2–3.[2] In this

23   order, the court construes the briefs answering these questions as court-directed motions for

24   reconsideration, based upon an intervening change in the controlling law, of the court's 2006

25   order granting Frye an evidentiary hearing on ten claims as well as supplemental briefing to assist

26   the court in resolving Frye's motion to have an evidentiary hearing on claim 37.

---

[2] On August 2, 2011, the Chief Judge reassigned Magistrate Judge Delaney—the currently assigned magistrate judge—to this case. *See* Order (Aug. 2, 2011), ECF No. 596.

1    Both parties submitted the briefing as directed.  *See* Pet'r's Brief, ECF No. 612; Resp't's

2    Opp'n, ECF No. 616; Pet'r's Reply, ECF No. 629.  On December 4, 2013, the magistrate judge

3    issued findings and recommendations based on the briefing.  *See* F&Rs, ECF No. 632.  Both Frye

4    and California filed objections to the findings and recommendations and each party responded to

5    the other's objections.  *See* Resp't's Objs., ECF No. 640; Pet'r's Objs., ECF No. 649; Pet'r's

6    Resp., ECF No. 652, Resp't's Resp., ECF No. 657.  On September 2, 2014, the case was

7    reassigned to the undersigned, as district judge.  *See* Order, ECF No. 655.

8         After consideration of the parties' objections to the original findings and

9    recommendations, the magistrate judge issued amended findings and recommendations—the

10   operative findings and recommendations—on January 22, 2015.  *See* ECF No. 658.  In the

11   amended findings and recommendations, the magistrate judge stated, "objections made to the

12   December 4, 2013[,] findings and recommendations will be considered objections to these

13   amended findings and recommendations.  Within thirty days after being served with these

14   amended findings and recommendations, any party may file supplemental objections to the

15   portions of these amended findings and recommendations that differ from the December 3,

16   2013[,] findings and recommendations."  Am. F&Rs at 122.

17        Frye moved for reconsideration, arguing the magistrate judge overstepped her authority

18   and violated Frye's due process rights by amending her findings and recommendations.  *See* Mot.

19   Recon. at 2–3, ECF No. 661.  The magistrate judge denied the motion.  *See* ECF No. 662.

20   California filed a response, stating it would rely on its original objections as the magistrate

21   judge's amendments had not changed its legal position with respect to the findings and

22   recommendations.  *See* Response at 2 (March 23, 2015), ECF No. 664.

23        Meanwhile, Frye moved again for reconsideration—this time before the undersigned— of

24   the magistrate judge's decision to issue amended findings and recommendations.  *See* ECF No.

25   663.  The court, relying on *United States v. Raddatz*, 447 U.S. 667 (1980), denied Frye's motion

26   for reconsideration of the constitutionality of the magistrate judge's amending her findings and

27   recommendations but reversed the magistrate judge's limitation on the parties' ability to file

28   objections to the amended findings and recommendations.  *See* Order (Nov. 17, 2015) at 6–8,

1   ECF No. 669.  The court ordered the parties to file any objections to the amended findings and

2   recommendations within thirty days and allowed the parties to reference the original findings and

3   recommendations in their new objections should they choose to do so.  *See id.* at 8.  Frye moved

4   again for reconsideration, arguing the court incorrectly relied on *Raddatz* in its order.  3d Mot.

5   Recon. at 2–3, ECF No. 673.  The court denied the motion for reconsideration, although agreeing

6   it had previously incorrectly relied on *Raddatz*.  *See* Order (Aug. 9, 2016) at 4–5, ECF No. 678.

7   The court ruled instead that the magistrate judge could issue amended findings and

8   recommendations based on a contextual reading of 28 U.S.C. § 636(b)(1).  *See id.* at 8.  The court

9   concluded the order with this directive:

> 10   Objections to the amended F&Rs, ECF No. 658, if any, shall be filed
> 11   within thirty days.  The parties may rely on their original objections
> 12   to the magistrate judge's now-vacated F&Rs, as [California] has
> 13   done here; if a party chooses this route the court will construe the
> 14   objections as lodged against the amended F&Rs.  Alternatively, the
> 15   parties may file objections to the amended F&Rs; if a party chooses
> 16   this route, the court will consider only these objections.  The court
> 17   will itself only consider the amended F&Rs and any objections to
> 18   those F&Rs as clarified here.

19   Order (Aug. 9, 2016) at 9–10.  Frye submitted objections to the amended findings and

20   recommendations.  *See* Pet'r's Objs., ECF No. 692.  On November 11, 2021, Frye moved the

21   court to withdraw two exhibits, a declaration by his sister Alice Frye and the transcript of a

22   deposition by his sister Alice Frye.  *See* ECF No. 706.  California does not oppose the motion to

23   withdraw the evidence.  *See* ECF No. 726.  The court grants Frye's request to withdraw the

24   evidence and does not consider the evidence for the purposes of deciding whether or not to adopt

25   the magistrate judge's findings and recommendations.

26        On November 21, 2021, Frye moved for his immediate release.  *See* Mot. Set Aside, ECF

27   No. 704.  The court issued an order to show cause why this action should not be set for a

28   mandatory settlement conference.  *See* ECF No. 707.  Frye responded by requesting the court rule

29   on just one of Frye's claims: that he did not receive a fair trial because he was shackled in front of

30   the jury (Claim 44).  Frye Response OSC (Dec. 15, 2021) at 3, ECF No. 710.  On May 19, 2022,

31   the court declined to adopt the amended findings and recommendations as to claim 44, issued a

1    writ of habeas corpus and granted judgment on Frye's behalf.  *See* ECF Nos. 715, 716.  California

2    appealed the decision to the Ninth Circuit and the Ninth Circuit reversed, holding that "reasonable

3    minds could differ about whether the state court had sufficient evidence to conclude the shackling

4    was not prejudicial" and that relief was unavailable to Frye under either 28 U.S.C. § 2254(d)(1) or

5    28 U.S.C. § 2254(d)(2) for claim 44.  *See Frye v. Broomfield*, 115 F.4th 1155, 1166 (9th Cir.

6    2024).  As a consequence of the Ninth Circuit's decision, the court reopened the case and now

7    returns to evaluate the remainder of the amended findings and recommendations.

8         The court bases its order below on its review of the following:

9         1.  The magistrate judge's amended findings and recommendations (ECF No. 658).

10        2.  California's objections to the initial findings and recommendations, construed as

11            objections to the amended findings and recommendations (ECF No. 640).

12        3.  Frye's response to California's objections (ECF No. 652).

13        4.  Frye's objections to the amended findings and recommendations (ECF No. 692).

14        5.  California's response to Frye's objections to the initial findings and recommendations,

15            construed as its response to Frye's objections to the amended findings and

16            recommendations (ECF No. 657).

17   **II.    ANALYSIS**

18        **A.    Scope of the Evidentiary Record Under Review (Question 1 for Both Parties)**

19             Both parties generally do not disagree in their briefing that the record the court may

20   consider in this case is limited to the factual record before the state court under both § 2254(d)(1)

21   and § 2254(d)(2).  *See* Pet'r's Brief at 47–48; Resp't's Opp'n at 18–22.[3]  The magistrate judge so

22   recommends.  *See* Am. F&Rs at 12 (citing *Pinholster*, 563 U.S. at 180–88).  The court agrees

23   with this conclusion and adopts the magistrate judge's recommendation that the proper scope of

24   the evidentiary record under review in this case is limited to the evidentiary record before the

25   California Supreme Court on Frye's unsuccessful habeas petitions.  However, the court notes the

26   magistrate judge exclusively relied on *Pinholster* when recommending that both § 2254(d)(1) and

---

[3] More specifically, Frye's answer to the question is "maybe but it does not matter."
Pet'r's Brief at 47–48; Pet'r's Reply at 24.

1    § 2254(d)(2) bar review of evidence introduced for the first time in a federal hearing. *See* Am.

2    F&Rs at 12. *Pinholster*'s holding addressed only the scope of federal habeas review under

3    § 2254(d)(1). *See* 563 U.S. at 180–83. Nevertheless, both the majority and the dissent in that

4    case assumed federal courts were barred from evaluating evidence that was not before the state

5    court under § 2254(d)(2) because the statute explicitly states that an application for a writ of

6    habeas corpus on behalf of a person in custody pursuant to a judgement in state court may be

7    granted when the state court's adjudication of the merits of that claim "resulted in a decision that

8    was based on an unreasonable determination of the facts in light of the evidence presented in the

9    State court proceeding." *Compare Pinholster*, 563 U.S. at 211 (Sotomayor, J., dissenting) *with*

10   *id.* at 185 n.7 (majority opinion). Based upon *Pinholster's* holding regarding § 2254(d)(1) and

11   based upon the statutory language of § 2254(d)(2), the court concludes it may evaluate Frye's

12   claims under § 2254(d) using only evidence Frye first brought to the attention of the California

13   Supreme Court.

14           **B.**    **Has Frye Already Established a Need for an Evidentiary Hearing on all**
15                     **Relevant Claims? (Question 2 for California)**

16          The magistrate judge recommended that the 2006 order granting Frye an evidentiary

17   hearing for the ten (10) claims referenced above should be reconsidered based upon changes in

18   the law. As noted above, the Supreme Court in *Pinholster*, 563 U.S. at 170, limited the scope of

19   review to the evidence before the state court. *See* Am. F&Rs at 23–24. Further, in *Harrington v.*

20   *Richter*, 562 U.S. 86 (2011), the Supreme Court altered the standards of reasonableness federal

21   courts use when evaluating a state court decision under § 2254(d)(2), meaning the test the court

22   used in 2006 to evaluate the California Supreme Court's denial of Frye's claims is no longer valid

23   law. *See id*. Effectively, the current magistrate judge is recommending reconsidering the 2006

24   order based on an intervening change in the controlling law. *See Marlyn Nutraceuticals, Inc. v.*

25   *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). While Frye contested a similar

26   claim made by California in its briefing, *see* Pet'r's Reply at 27–30, he has not objected to the

27   magistrate judge's recommendation that this court can no longer rely on the 2006 order granting

28   an evidentiary hearing for these claims because the 2006 order considered evidence that was not

1   presented to the California Supreme Court and because it used a standard of reasonableness the

2   Supreme Court has since ruled violates AEDPA's deferential standard for federal habeas review

3   of state court decisions. *See* F&Rs at 24. The court agrees with the magistrate judge's

4   recommendations and thus it reconsiders the 2006 order granting in part Frye's request for an

5   evidentiary hearing on ten claims and reevaluates those ten claims as well as claim 37 under

6   § 2254 according to the currently controlling federal law.

7         Unless otherwise noted below, the court, adopts the magistrate judge's recommended

8   legal standard for evaluating § 2254 claims after a summary denial by the California Supreme

9   Court of a state habeas petition found on pages 11 to 17 of the amended Findings and

10   Recommendations and gives only a brief summary of the relevant law here.

11         First, while Frye took some of his claims up on direct appeal, and the California appellate

12   court issued a written decision explaining its decision on those claims, Frye raised most of his

13   claims only in his state habeas petitions, which the California Supreme Court summarily denied.

14   Under California law, a summary denial means the California Supreme Court determined Frye

15   failed to make a prima facie case he was entitled to relief even assuming the allegations in his

16   petition were true. The denial is presumed to be on the merits. To obtain relief from this denial

17   under § 2254, Frye must show either the decision:

18         (1) resulted in a decision that was contrary to, or involved an unreasonable

19            application of, clearly established federal law, as determined by the

20            Supreme Court of the United States; or

21         (2) resulted in a decision that was based on an unreasonable determination of

22            the facts in light of the evidence presented in the state court proceeding.

23   28 U.S.C. § 2254(d). The standard of review under § 2254 is extremely deferential. A petitioner

24   must show "that the state court's ruling on the claim being presented in federal court was so

25   lacking in justification that there was an error well understood and comprehended in existing law

26   beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 786–87. Thus, federal

27   habeas relief is precluded if "fairminded jurists could disagree on the correctness of the state

28   court's decision." Am. F&Rs at 12 (quoting *Richter*, 562 U.S. at 786). Further, when the court

1    considers Frye's claims the California Supreme Court summarily denied, it must consider any

2    reasonable basis that Court may have had to deny Frye relief.  *Id.* at 13 (citing *Richter*, 562 U.S.

3    at 786.)  To overcome this deferential standard, Frye thus must show "there was no reasonable

4    basis for the state court to deny relief." *Id.* (quoting *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir.

5    2013)).

6         If Frye does show the California Supreme Court's decision was unreasonable under

7    § 2254, then this court reviews his claim for relief *de novo* and may develop the evidentiary

8    record through a hearing, or, in the case of claims 42 and 44, evaluate those claims on the hearing

9    record it held in 2008.  *See* Am. F&Rs at 17 (citing *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir.

10   2008)).

11        **C.      Constitutional Issues Related to California's Habeas Corpus Process**

12        Before arguing the specific claims mentioned above satisfy § 2254(d)(1) or § 2254(d)(2),

13   Frye claims the process by which California courts adjudicate habeas corpus petitions is

14   unreasonable under § 2254 because it violates his federal constitutional rights in a variety of

15   ways.  *See* Pet'r's Brief at 51–80.  The court construes these challenges to California's habeas

16   procedures as a motion for the court to hear all eleven claims *de novo* without first applying

17   § 2254 deference to the California Supreme Court's decision.  Many of Frye's claims involve the

18   argument that California violates the federal Constitution by requiring its habeas petitioners to

19   overcome a presumption that state court decisions were true, fair and accurate.  *See id.* at 57

20   (citing *People v. Duvall*, 9 Cal. 4th 464, 474 (1995)).  Frye also requests, for the first time, an

21   evidentiary hearing to determine how the California Supreme Court arrived at a decision to

22   summarily deny his petitions for habeas corpus as well as to decide for the first time claim 39 in

23   his operative petition before this court—a claim the court did not address in its 2006 decision—

24   that the California Supreme Court arbitrarily reviews capital habeas corpus cases.  *See id.* at 78–

25   80.  Several courts in this district have heard similar arguments to the ones Frye makes and have

26   denied relief.  *See Riel v. Warden, San Quentin Prison*, No. 01-0507, 2015 WL 6690127, at *11–

27   13 (E.D. Cal. Oct. 30, 2015), *findings and recommendations adopted by* No. 01-0507 (E.D. Cal.

28   Mar. 19, 2018); *Cornwall v. Warden, San Quentin Prison*, No.06-0705, 2018 WL 934542, at

1    *11–16 (E.D. Cal. Feb. 15, 2018), *findings and recommendations adopted by* 2019 WL 12117105

2    (E.D. Cal. Mar. 19, 2019).

3         The magistrate judge recommends denying an evidentiary hearing on Frye's claims that

4    are based solely on the contention that California's procedures violated Frye's constitutional

5    rights and denying an evidentiary hearing on claim 39 or otherwise allowing investigating the

6    procedures or decision-making of California state courts in habeas proceedings. *See* Am. F&Rs

7    at 17–23, 30–32. Frye has objected to these recommendations. *See* Pet'r's Objs. at 12–38, 41–

8    46. Having reviewed the file, the court finds the findings and recommendations regarding Frye's

9    claims relating to California's alleged procedural defects in its consideration of habeas corpus

10    petitions to be supported by the record and by the proper analysis.

11         **D**    **Application of § 2254 to Frye's Specific Claims**

12         The remainder of this order addresses the magistrate judge's recommendations regarding

13    reconsideration of the order granting Frye's motion for an evidentiary hearing on claims 2, 3, 4, 5,

14    7, 25, 28–29, 37, 42, and 44.

15         Before addressing each claim, the court considers Frye's objections that cut across many

16    of his individual claims for relief. First, Frye objects to the magistrate judge's handling his

17    claims on a claim-by-claim basis as opposed to analyzing all ineffective assistance of counsel

18    claims collectively. *See* Pet'r's Objs. at 39–41. The court finds the magistrate judge's analysis to

19    be proper. While Frye claims *Pinholster* requires federal courts to evaluate claims identically to

20    the way the state supreme court evaluated them, *Pinholster* says no such thing. The Court in

21    *Pinholster* was concerned with the evidentiary record before the state court and not the claim or

22    claims before the state court. *See* 563 U.S. at 180–81. Further, it was Frye who presented

23    ineffective assistance of counsel as many distinct claims in his operative petition. *See generally*

24    2d Am. Pet. Finally, Frye has made a separate cumulative claim, claim 45, but that claim is not

25    relevant to this order as Frye has not moved for an evidentiary hearing on that claim. *See id.*

26    ¶¶ 98–99. If and when the court evaluates that claim, all of Frye's ineffectiveness claims will be

27    considered collectively, along with all his other claims. This objection is overruled.

28    /////

1      Second, Frye objects to the magistrate judge's not considering the length of the jury's

2  deliberations—three days—when evaluating his ineffective assistance of counsel claims. *See*

3  Pet'r's Objs. at 57. Courts may consider the length of jury deliberations when evaluating the

4  prejudice prong of *Strickland*. *See, e.g.*, *Thomas v. Chappell*, 678 F.3d 1086, 1103 (9th Cir.

5  2012) (collecting cases). But they are not required to consider deliberations. Further, there is no

6  evidence the California Supreme Court did not take the length of deliberations into account when

7  it denied Frye's petitions for habeas corpus. Further, for all of the claims addressed below, a

8  reasonable jurist could find, taking the length of deliberations into account, that Frye nevertheless

9  has not made out a prima facie case for relief. Thus, the court finds no basis for not accepting the

10  magistrate judge's conclusions. This objection is overruled.

11      Third, Frye claims the magistrate judge erred in finding Frye failed to show the California

12  Supreme Court used an incorrect test for prejudice by following *Lockhart v. Fretwell*, 506 U.S.

13  364 (1993) instead of *Strickland*. *See* Pet'r's Objs. at 41. This objection is overruled as the

14  magistrate judge's analysis that Frye has failed to make a showing that would overcome the

15  presumption that state courts know and follow the law, *see Woodford v. Visciotti*, 537 U.S. 19, 24

16  (2002) (collecting cases), is supported by the record and by the proper analysis. *See* Am. F&Rs at

17  32–36. The court notes in particular that the California Supreme Court applied *Strickland* and did

18  not apply *Fretwell* in denying Frye's direct appeal. *See Frye*, 18 Cal. 4th at 952–53, 979.

19      Fifth, Frye argues the magistrate judge did not consider "allegations not refuted by the

20  record." *See id.* at 46–49. For example, according to Frye, the magistrate judge refused to

21  consider Frye's allegation that an ex parte hearing was held early on in the case on November 21,

22  1985, during which Frye's trial counsel at the time, Larry Dixon, informed the trial judge he was

23  incompetent to handle the case. Frye alleges the trial judge indicated he would not remove Dixon

24  as counsel unless he located substitute counsel. Pet'r's Objs. at 48. The magistrate judge

25  correctly noted, however, there is no evidence of this ex parte hearing in the state court record.

26  Thus, it was appropriate for her to not consider the allegation as evidence, faithfully adhering to

27  the holding of *Pinholster*. *See* 563 U.S. at 180–83. Frye's objection is overruled.

28  /////

1   Finally, Frye argues his habeas counsel should be replaced under *Trevino v. Thaler*, 569

2   U.S. 413 (2013) and *Martinez v. Ryan*, 466 U.S. 1 (2012), if the magistrate judge is correct in

3   asserting "petitioner made no attempt to place the evidence he has collected regarding petitioner's

4   mental state within the legal context of the guilt phase determination." Pet'r's Objs. at 40–41

5   (quoting Am. F&Rs at 61). But the court previously found Frye's habeas counsel had properly

6   contextualized as relevant to the guilt phase determination. Moreover, the claim appears moot

7   given that Frye obtained new habeas counsel in 2019. *See* Order (Nov. 21, 2019), ECF No. 700.

8   The court now turns to consideration of each claim addressed by the pending findings and

9   recommendations.

10   **1.      Claim 2**

11   In claim two, Frye alleges his trial lawyers were ineffective at the guilt stage because they

12   did not introduce mental health evidence that might have convinced a jury he could not have

13   formed the requisite intent for a felony murder conviction. *See* 2d Am. Pet.¶¶ 225–252. The

14   magistrate judge recommended denying Frye's request for an evidentiary hearing under the

15   prejudice prong of *Strickland*. *See* Am. F&Rs at 37–63.

16   Frye makes two objections. First, Frye argues the magistrate judge applied the incorrect

17   standard under California law for a mental health defense in saying, "Petitioner only suffered

18   prejudice if the mental state defense would have been successful to show that 'because of his

19   mental illness or voluntary intoxication, [petitioner] did not <u>in fact</u> form the intent unlawfully to

20   kill.'" Am. F&Rs at 61 (emphasis in original) (quoting *People v. Saille*, 54 Cal. 3d 1103, 1116–

21   17 (1991)). The objection is overruled. The court finds the magistrate judge properly applied the

22   correct California law on mental state defenses and Frye's objection to the phrase "in fact" mis-

23   reads *Saille*'s holding. *Saille* is referring to "in fact" as in, on the day of the crime, the defendant

24   had not formed the requisite mens rea—as opposed to a defense where the defendant claims he

25   did not have the capacity to ever form the requisite mens rea.

26   Second, Frye argues the magistrate judge committed factual error by mistaking testimony

27   by Garth Lavallee for testimony by Ron Wilson. Objs. at 53 (citing RT at 5818:14-17,

28   6001:5-11). This objection is overruled. The magistrate judge cites to both Lavallee's testimony

13

1  as well as Wilson's.  *See* Am. F&Rs at 62.  The court also disagrees with Frye that the magistrate

2  judge took Jennifer Warsing's testimony out of context as it finds the magistrate judge's analysis

3  of Warsing's testimony to be proper and supported by the record.  *See id.*

4      In sum, the court adopts the magistrate judge's overall conclusion as to Claim 2 and

5  denies an evidentiary hearing.  As Frye admits, he was tried under a first-degree felony murder

6  theory of liability.  *See* Pet'r's Objs. at 53.  Under that theory, a jury would have needed only to

7  find Frye had the specific intent "to commit robbery and/or burglary."  RT at 9291.  The

8  prosecution had multiple people testify Frye told them he wanted to rob the Brandts.  *See* Am.

9  F&Rs at 62.  A reasonable jurist could have found this testimony compelling enough to show

10  Frye had the requisite mens rea even if presented with more evidence of Frye's mental health and

11  substance abuse problems.

12              **2.     Claims 3 and 7**

13      In claim 3, Frye alleges ineffective assistance of his trial counsel during the guilt phase for

14  failure to develop and present a coherent trial strategy.  *See* 2d Am. Pet. ¶¶ 253–267.  In claim 7,

15  Frye alleges ineffective assistance of counsel at the guilt phase for failure to object to various

16  instances of prosecutorial misconduct.  *See* 2d Am. Pet. ¶¶ 372–415.  The magistrate judge

17  recommends denying an evidentiary hearing on claim 3.  Having reviewed the file, the court finds

18  the findings and recommendations to be supported by the record and by the proper analysis.

19              **3.     Claims 4 and 5**

20      In claims 4 and 5, Frye makes various allegations of ineffective assistance of counsel by

21  one of his trial lawyers, Richard Hawke.  *See* 2d Am. Pet. ¶¶ 268–325.  The magistrate judge

22  recommends denying claims 4 and 5.  *See* Am. F&Rs at 122.  The court in its 2006 order had

23  previously denied these claims but had permitted Frye to present evidence of the factual

24  allegations supporting them in support on claim 2.  *See* Order (Dec. 1, 2006) at 24–25, 52 n.23.

25  /////

1    Because the court has denied an evidentiary hearing on claim 2, it now denies claims 4 and 5 in

2    full.

3                    **4.    Claim 25**

4          In claim 25, Frye alleges his jailors deprived him of his right to counsel by taking Frye off

5    of his anti-anxiety medication prior to the start of the penalty phase of his trial.  *See* 2d Am. Pet.

6    ¶¶ 663–78.  The magistrate judge recommends denying relief on this claim.  *See* Am. F&Rs at

7    87–100.  Frye objects that the magistrate judge incorrectly believed Frye was relying on a

8    "constitutional right to be medicated claim."  Pet'r's Objs. at 60.  Instead, Frye claims he is

9    relying on *Drope v. Missouri*, 420 U.S. 162 (1975), and *Pate v. Robinson*, 383 U.S. 375 (1966),

10   which Frye claims provide a state court must observe procedures to ensure a defendant is

11   competent to stand trial.  *See id.*  The court overrules this objection.  The magistrate judge's

12   analysis is supported by the record and by the proper analysis.  A special jury—independent from

13   the one that decided Frye's guilt and punishment—determined that Frye was competent to stand

14   trial.  *See* Court Transcript (CT) 4400.  Frye's trial counsel then asked the presiding judge for an

15   independent finding on Frye's competence to stand trial.  *See id.*  4400–4406.  The judge granted

16   the request and also ruled Frye was competent to stand trial.  *See* RT 9461.  Given the record

17   here, a reasonable jurist could conclude the trial court applied procedural safeguards to ensure

18   Frye was competent before proceeding with the penalty phase of the proceeding.

19                   **5.    Claims 28 and 29**

20         In claims 28 and 29, Frye argues he received ineffective assistance of counsel at the

21   penalty phase because his trial lawyers failed to put on mitigating mental health evidence and

22   mitigating evidence from his social history to humanize him before the jury.  *See* 2d Am.

23   Pet. ¶¶ 717–746.  The magistrate judge recommends granting an evidentiary hearing on claims 28

24   and 29.  *See* Am. F&Rs at 78–87.  California objects, arguing the magistrate judge failed to apply

25   the deferential standard of review under AEDPA, and she should instead have found that a

26   reasonable jurist could conclude Frye's trial counsel did investigate his mental health issues, and

27   then, like defense counsel in *Pinholster*, strategically decided not to present a mental health or

1   mitigation case to the jury in the penalty phase. *See* Resp't's Objs. at 21. As explained below,

2   the court sustains California's objections and declines to adopt the magistrate judge's

3   recommendation to hold an evidentiary hearing on claims 28 and 29.

4        As noted above, the court reviews Frye's claims for ineffective assistance of counsel at the

5   penalty phase under the highly deferential standard of review imposed by § 2254. *See Richter*,

6   562 U.S. at 786–87 (petitioner must show "the state court's ruling on the claim being presented in

7   federal court was so lacking in justification that there was an error well understood and

8   comprehended in existing law beyond any possibility for fairminded disagreement"). To

9   overcome this high bar, Frye needs to show "there was no reasonable basis for the state court to

10  deny relief." Am. F&Rs at 13 (quoting *Walker*, 709 F.3d at 939). This deferential standard is

11  applied to the already deferential standard for ineffective assistance of counsel found in

12  *Strickland v. Washington*, which requires Frye to show his counsel's performance "fell below an

13  objective standard of reasonableness" and that "there is a reasonable probability that, but for

14  counsel's professional errors, the result of the proceeding would have been different." 466 U.S.

15  668, 687–88, 694 (1984). Under the first prong of *Strickland*, there is a "strong presumption that

16  counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at

17  689.

18       Under this double-deferential standard, the court finds a reasonable jurist could conclude

19  Frye's trial counsel did not fall below an objective standard of reasonableness in the penalty

20  phase of the trial. For example, a jurist could find Frye's trial counsel decided not to introduce

21  more mitigating mental health evidence and social history evidence as part of a strategic choice to

22  emphasize instead the testimony of Frye's loved ones. Frye's mother as well as childhood friends

23  testified that Frye had redeeming qualities, and his life should be spared. *See* Am. F&Rs at 10.

24  Arguably, putting on a different case that focused on Frye's mental health struggles, might have

25  distracted from these personal, emotional appeals. Moreover, Frye had just given the jury good

26  reason to find him quite unsympathetic, as he had opened the penalty phase by providing a

27  disastrous allocution in which he harangued the jury for finding him guilty. *See* Am. F&Rs at 9–

28  10. Counsel did put on witnesses who pointed out some of Frye's challenges as a teenager,

16

1    including being involved in a devastating car accident and the personal difficulties he experienced

2    after his mother left his father.  *See id.* at 10.  Given the circumstances, the deference afforded

3    counsel's judgment regarding how to handle the trial dynamic at the time is, appropriately,

4    especially great.

5            Most importantly, as California points out, Frye's trial counsel did not neglect Frye's

6    mental health or social history in their investigations.  Frye's counsel had a psychiatrist,

7    Dr. James Peal, and a neurologist, Dr. Stephen McGuire, testify during the guilt phase of the trial.

8    Counsel also had neuropsychologist Dr. Linda Wagner and psychiatrist Dr. Doug Anderson

9    interview Frye before the guilt phase of the trial commenced, although they did not end up

10   testifying.  *See* Am. F&Rs at 42–51.  Finally, it appears Frye's counsel had contacted another

11   doctor, one Dr. Craig Haney, who they were considering having testify during the penalty phase

12   but ultimately decided not to put on the stand.  *See* RT 9615.  Frye's counsel also made a trip to

13   Indiana to investigate his social history background.  *See* Am. F&Rs at 79.  Thus, Frye's

14   counsel's actions were not analogous to those of the counsel in *Porter v. McCullom*, whose

15   performance was found to be deficient because he did literally nothing to investigate his client's

16   mental health social history background.  *See* 558 U.S. 30, 39–40 (2009) (holding defendant's

17   counsel not obtaining any of defendant's records or interviewing his family members prior to the

18   penalty phase constituted deficient performance under prong one of *Strickland*).  Here, as in

19   *Pinholster*, Frye's trial counsel conducted investigatory work even if they did not present all they

20   found to the jury in the penalty phase.

21           In hindsight, Frye's trial counsel may not have adopted the best strategy at the penalty

22   phase, but as the Supreme Court has noted in *Pinholster*, "there are countless ways to provide

23   effective assistance in any given case" and "those decisions are due 'a heavy measure of

24   deference.'"  563 U.S. at 197 (quoting *Strickland*, 466 U.S. at 689, 691).  The court finds that a

25   reasonable jurist could have applied heavy deference to the choices Frye's trial counsel made in

26   the penalty phase and, accordingly, have denied relief.  The court does not find California's

27   denial of Frye's ineffective assistance of counsel claims to be unreasonable according to clearly

28   established federal law and thus denies Frye relief for claims 28 and 29.

17

### 6.    Claim 37

In claim 37, Frye alleges California's death penalty scheme is unconstitutional because it fails to prevent the death penalty from being administered in an arbitrary and capricious way. *See* 2d Am. Pet. ¶¶ 817–826. The magistrate judge recommends denying an evidentiary hearing on claim 37. *See* Am. F&Rs at 94–100. Frye has objected on various grounds, but the court overrules his objections. The court is particularly convinced that the Ninth Circuit's holding in *Karis v. Calderon*, 283 F.3d 1117, 1141 n.11 (2002), which found California's statutory scheme to be facially constitutional, effectively forecloses Frye's claim for relief under claim 37. The court thus finds the findings and recommendations to be supported by the record and by the proper analysis in this respect.

### 7.    Claim 42

The crux of claim 42 is that Frye's constitutional rights were violated because one of the jurors—Juror Fairfield—spoke with her minister in between the trial and penalty phase about what the bible had to say about the death penalty. *See* 2d Am. Pet. ¶¶ 971–85. As noted above, the court previously held an evidentiary hearing on this claim in 2008. Given the subsequent change in law, the parties have now briefed whether the California Supreme Court's denial of this claim should be upheld in applying the new controlling federal law. In reviewing the findings and recommendations, the court may use only the evidence before the California Supreme Court at the first step. *See Pinholster*, 563 U.S. at 180–83. If Frye shows California's decision was unreasonable under § 2254, then, and only then, can the court evaluate Frye's claim *de novo* taking account of the evidence presented at the 2008 evidentiary hearing. *See Frantz*, 533 F.3d at 737 (if ¶ 2254 is satisfied, "then federal habeas courts must review the substantive constitutionality of the state custody *de novo*").

The magistrate judge recommends granting relief based on § 2254(d)(2) and deciding Claim 42 on the merits based on the evidence presented at the 2008 evidentiary hearing; she then recommends denying Frye's claims on the merits. *See* Am. F&Rs at 100–14. For the reasons stated below, the court adopts the magistrate judge's conclusion that the evidentiary hearing record may be considered, but decides Frye should be granted relief on this claim.

18

1    First, the court sustains Frye's objection to the magistrate judge's application of the law to

2    this claim as described below.  *See* Pet'r's Objs. at 80–84.  The court, with the benefit of the

3    Ninth Circuit's en banc holding in *Godoy v. Spearman*, 861 F.3d 956 (2017), which was not

4    available to the magistrate judge, employs the two-part framework for evaluating a jury

5    misconduct claim as clearly established by the United States Supreme Court in *Mattox v. United*

6    *States*, 146 U.S. 140 (1892), and in *Remmer v. United States*, 347 U.S. 227 (1954).[4]

7    At step one the court determines if contact by a juror with an outside party was "possibly

8    prejudicial."  *Godoy*, 861 F.3d at 966–67 (citing *Mattox*, 146 U.S. at 150).  The defendant must

9    surpass only a "low threshold" to meet this burden and provide "evidence of an external contact

10   that has a 'tendency' to be 'injurious to the defendant.'"  *Id.* at 967 (quoting *Tarango v.*

11   *McDaniel*, 837 F.3d 936, 936, 947 (9th Cir. 2016)).  The contact must raise a credible risk of

12   influencing the verdict in order to trigger a presumption of prejudice.  *See id.*  When determining

13   if the contact raises a credible risk, courts consider the identity of the outside party and the nature

14   of the contact.  Communications "about the matter pending before the jury," for example, "greatly

15   increase the risk of prejudice."  *Godoy*, 861 F.3d at 967 (quoting *Remmer*, 347 U.S. at 229).  The

16   presumption may be triggered "even when [w]e do not know from the record . . . what actually

17   transpired, or whether the incidents that may have occurred were harmful or harmless."  *Id.* at 968

---

[4] Specifically, the Ninth Circuit in *Godoy* disavowed dicta in cases like *United States v. Dutkel*, 192 F.3d 893 (9th Cir. 1999) and *United States v. Rosenthal*, 454 F.3d 943 (9th Cir. 2006), *see* 861 F.3d at 968 n.6, on which the magistrate judge relied, *see* Am. F&Rs at 104–05. The magistrate judge also incorrectly, however understandably, relied upon *Brecht v. Abramson*, 507 U.S. 619 (1993) for its harmless error standard.  *See* Pet'r's Objs. at 84–88.  It is clear, for example, that for extrinsic evidence juror misconduct cases, the *Brecht* standard for harmlessness applies.  *See Kipp v. Davis*, 971 F.3d 866, 876 (9th Cir. 2020).  However, the *Mattox/Remmer* standard as enunciated in *Godoy* applies in evaluating third party contact juror misconduct claims such as Frye's.  *See Espinoza v. Montgomery*, 816 Fed. App'x 217, 218 n.2 (9th Cir. 2020) (enunciating distinction between extrinsic evidence juror misconduct cases and third party contact juror misconduct cases); *Clark v. Chappell*, 936 F.3d 944, 971 (9th Cir. 2019) (applying *Mattox/Remmer* presumption to third party contact case); *Von Tobel v. Benedetti*, 975 F.3d 849, 857 (9th Cir. 2020) (applying standard for prejudice as outlined in *Godoy* and not *Brecht* to third party juror misconduct case); *see also Clark v. Broomfield*, No. 97-20618, 2022 WL 1450538, at *2 (N.D. Cal. May 9, 2022) (applying distinction between third party contact juror misconduct claims and extrinsic evidence juror misconduct claims); *see also Bonfiglio v. Montgomery*, No. 16-2349, 2024 WL 2093650, at *10–11 (C.D. Cal. Mar. 12, 2024) (same).

1    (quoting *Remmer*, 347 U.S. at 229). Ultimately the court must take "the surrounding

2    circumstances into consideration," to determine if the contact "interferes with the juror's role as a

3    juror." *Clark v. Chappell*, 936 F.3d 944, 971 (9th Cir. 2019), *amended on denial of r'hg en banc,*

4    948 F.3d 1172 (9th Cir. 2020).

5    　　　　If the presumption of prejudice attaches, "the burden shifts to the state to prove the contact

6    was harmless." *Godoy*, 861 F.3d at 968. As the Ninth Circuit held in *Godoy*, the state has a

7    "heavy burden" at this stage. *Id.* at 970. Indeed, to overcome the presumption of prejudice, the

8    state must show "there is no reasonable possibility that the communication . . . influenced the

9    verdict." *Godoy*, 861 F.3d at 968 (quoting *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d

10   691, 697 (9th Cir. 2004)). When the presumption arises but the prejudicial effect of the contact is

11   unclear from the existing record, the court must hold a hearing to "determine the circumstances

12   [of the contact], the impact thereof upon the juror, and whether or not it was prejudicial." *Id.*

13   (quoting *Remmer*, 347 U.S. at 229–30) (alteration in original).

14   　　　　Here, the court adopts the magistrate judge's recommendation that Frye has satisfied

15   ¶ 2254(d)(2) as to claim 42, albeit based on the legal standard described above and not upon the

16   magistrate judge's recommended legal test for juror misconduct. The evidence Frye proffered

17   before the California Supreme Court in Frye's habeas petition, *see* Am. F&Rs at 100–01, was a

18   declaration from Juror Fairfield. Fairfield submitted she discussed the death penalty with her

19   minister before deciding upon the verdict in the penalty phase. In her words,

> 20   Between the guilt and the penalty phase, I talked with a clergyman
> 21   because of the difficult decision I had just made in finding Mr. Frye
> 22   guilty and another difficult decision remaining about whether Mr.
> 23   Frye should be sentenced to death. The clergyman reconfirmed my
> 24   own beliefs about the propriety of what I was doing.

25   Pet'r's Fairfield Decl. ¶ 3 (Apr. 18, 2000).[5] Based on the evidence submitted by Frye to the

26   California Supreme Court, the court finds no reasonable jurist could have found the contact was

27   not at least "possibly prejudicial." *Godoy*, 861 F.3d at 959 (quoting *Mattox*, 146 U.S. at 150 ).

---

[5] The court references here the copy of Fairfield's declaration, submitted as exhibit 38 in the evidentiary hearing that took place from August 19–21, 2008.

1    The discussion between Juror Fairfield and her minister was about the criminal matter pending

2    before the jury.  Further, one vote could have made all the difference as imposition of the death

3    penalty requires a unanimous jury.  Finally, the minister was at least possibly in a position of

4    spiritual and moral authority over Ms. Fairfield and his opinions may have put her at ease about

5    voting for the death penalty in what she says was a "difficult decision."  As another district court

6    put it, analyzing an almost identical fact pattern, Fairfield's conversation with her minister "freed

7    [her] from the doubt that likely caused [her] to seek out [her] minister's advice in the first place

8    and steeled [her] resolve to adhere to [her] prior opinion about the propriety of the death penalty."

9    *Clark v. Broomfield*, No. 97-20618, 2022 WL 1450538, at *11 (N.D. Cal. May 9, 2022).  The

10   subject matter of her conversation and the identity of Fairfield's conversant as her minister mean

11   no reasonable jurist could have found the contact was not possibly prejudicial to Frye.

12           California has submitted a competing declaration from Fairfield.  *See* Am. F&Rs at 107.

13   In it, Fairfield stated, "I did speak to my minister around the time of the trial, but I do not

14   remember whether I did so before or after my vote for the death penalty."  Resp't's Fairfield

15   Decl. ¶ 3 (July 6, 2000).[6]  She also stated:

16               I did not discuss the details of Mr. Frye's trial with my minister.  I
17               asked him what the Bible had to say about the death penalty.  My
18               minister gave me a 1 ½ page[d] written response that basically said
19               the people voted and enacted laws to determine what crimes are and
20               what the penalties should be.

21   *Id.* ¶¶ 5–6 (reflecting hand annotations regarding length of response).  No reasonable jurist could

22   find Fairfield's second declaration clarifies matters to show the contact was harmless.  Indeed,

23   Fairfield tells largely the same story in her second declaration as she did in her first.  She spoke

24   with a person of moral authority about the death penalty.  In fact, he gave her a written

25   response—arguably an extrajudicial jury instruction—that, for the reasons stated above, appears

26   to have reassured her it was acceptable to vote for the death penalty.  The declaration did raise

27   sufficient doubt to justify an evidentiary hearing to allow California to show harmlessness given

_____

[6] The court references here the copy of Fairfield's declaration, submitted as exhibit 39 in the evidentiary hearing that took place from August 19–21, 2008.

1   Fairfield's saying she did not recall when she spoke to the minister about the death penalty.  *See*

2   *Godoy*, 861 F.3d at 959 (holding courts should hold evidentiary hearings "to determine the

3   circumstances [of the contact], the impact thereof upon the juror, and whether or not it was

4   prejudicial").  Thus, the court adopts the magistrate judge's recommendation to find the 2008

5   evidentiary hearing was necessary.

6          California objects, arguing Frye had a burden to show what Fairfield's minister wrote to

7   Fairfield in his petition to the California Supreme Court.  Resp't's Objs. at 25.  The court

8   overrules this objection as *Remmer* states the presumption may attach "even when [w]e do not

9   know from th[e] record . . . what actually transpired, or whether the incidents that may have

10  occurred were harmful or harmless."  *Remmer*, 347 U.S. at 229.

11         As noted, the magistrate judge recommends denying Claim 42 on the merits based on the

12  evidence presented at the evidentiary hearing.  After reviewing the record, the court declines to

13  adopt this recommendation.  The legal standard applicable to the evidentiary hearing means it was

14  held to determine "the circumstances [of Fairfield's misconduct], the impact thereof upon the

15  juror, and whether or not it was prejudicial."  *Remmer*, 347 U.S. at 230.  "If the state does not

16  present contrary evidence that rebuts the presumption of prejudice by showing 'there is no

17  reasonable possibility that [Fairfield's] communication[s] . . . influenced the verdict," then the

18  court should grant Frye's petition for habeas corpus.  *See Godoy*, 861 F.3d at 970 (quoting

19  *Caliendo*, 365 F.3d at 697).

20         Here, for the same reasons reviewed above, based on the evidence in the record, the court

21  finds Fairfield's contact was at least possibly prejudicial.  While Fairfield's memory during her

22  deposition—which took place on August 20, 2008, twenty years after trial had concluded—was

23  faulty, the evidence taken as a whole points to her having discussed the death penalty with her

24  minister between the trial phase and the penalty phase.  Her declaration closest in time to the

25  actual trial says that was the timeframe of her discussions with her minister.  Pet'r's Fairfield

26  Decl. ¶ 3 (Apr. 18, 2000).  Further, during redirect by Frye's habeas counsel, Fairfield stated as

27  much in this colloquy:

22

1
2
3
Q: Ms. Fairfield, do you recall when I asked you earlier whether you
went back to court after you got the document from your minister,
do you recall what your answer was?

4    A: I said we went back for the penalty phase.

5    Q: Is that what you believe happened?

6    A: That is what I believe happened, yes.

7    Fairfield Dep. at 37, ECF No. 421-1.

8          The record also supports the conclusion the minister was aware of Fairfield's role as juror

9    in Frye's case.  While Fairfield stated she did not discuss the facts of the case with the minister,

10   she also said she did not need to because:

11
12
13
14
15
Everybody in Sutter Creek and Amador County knew I was on this
jury so I didn't have to, you know, mention [that she was on the case].
I did ask my minister what—and he knew, everybody knew, you
know that—what the nature of this trial.  Was in the papers.  And so
I asked him what the Bible had to say about the death penalty.

16   *Id.* at 10.  Fairfield also stated the minister did not provide his own writings.  He only provided

17   bible quotes.  *See id.* at 17–18.  But the quotes were selected and curated and designed to answer

18   what the bible says about the death penalty—that was relevant to Frye's case.

19         Fairfield's best recollection of the overall message she took from the minister's written

20   response to her question about the death penalty is in her second declaration: "My minister gave

21   me a written response that basically said the people voted and enacted laws to determine what

22   crimes are and what the penalties should be."  Resp't's Fairfield Decl. ¶ 6.  This overall message,

23   combined with the moral authority of the minister, on a topic directly related to Juror Fairfield's

24   responsibilities and given that Fairfield's decision could determine whether Frye lived or died,

25   was prejudicial to Frye as it interfered with Fairfield's responsibilities as a juror.  In effect it

26   served as an improper third-party jury instruction.  *See* RT 9380–81 (judge instructing jurors at

27   end of guilt phase "not to discuss the case with any other person or with the jurors outside the jury

28   room until the case is finally over."); RT 9766–75 (judge providing instructions to jury regarding

29   determining the penalty and telling jurors not to follow any other instructions, including from the

30   guilt phase).

1    California has not rebutted the presumption of prejudice.  The evidentiary hearing

2   memorialized more prejudicial evidence about Fairfield's contact.  The hearing supports the

3   conclusion the minister was aware of the facts of the trial and Fairfield's role as juror and could

4   have curated the quotes to send a message advocating a certain result at the penalty phase.  A

5   reasonable possibility exists Fairfield's contact with her minister took place between the trial

6   phase and the penalty phase, at the critical time Fairfield was thinking about the moral

7   implications of her impending decision and was most vulnerable to being swayed by a third party.

8   Thus, the government cannot show the contact was harmless under the *Mattox/Remmer*

9   framework as outlined in *Godoy*.  *See* 861 F.3d at 968.

10   Because California has not met its heavy burden to overcome the presumption of

11   prejudice, the court grants Frye's writ of habeas corpus for Claim 42.

12                    **8.    Claim 44**

13   The court declines to adopt the magistrate's findings and conclusion regarding Claim 44

14   and instead adopts the Ninth Circuit's holding in *Frye*, 115 F.4th at 1155.  The court accordingly

15   denies Frye relief on Claim 44.

16        **E.    Certificate of Appealability**

17   Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the court has

18   considered whether to issue a certificate of appealability.  Before petitioner can appeal this

19   decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

20   Where the petition is denied on the merits, a certificate of appealability may issue under

21   28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

22   constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

23   appealability indicating which issues satisfy the required showing or must state the reasons why

24   such a certificate should not issue.  *See* Fed. R. App. P. 22(b).  Where the petition is dismissed on

25   procedural grounds, a certificate of appealability "should issue if the prisoner can show: (1) 'that

26   jurists of reason would find it debatable whether the district court was correct in its procedural

27   ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid

24

1    claim of the denial of a constitutional right.'" *Morris v. Woodford*, 229 F.3d 775, 780 (9th Cir.

2    2000) (quoting *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).

3         The court provides Frye the opportunity to request a certificate of appealability on any of

4    the denied claims.  Any request must be filed within seven days of the filed date of this order.

5   **IV.    CONCLUSION**

6         As explained more fully above:

7         •   Frye's motion to withdraw evidence is **granted** (ECF No. 706).

8         •   The magistrate judge's findings and recommendations, ECF No. 658, are **adopted**

9           **in part.**

10         •   Frye's claims 2, 3, 4, 5, 7, 25, 28, 29, and 44 are **denied** because the California

11           Supreme Court's rejection of those claims was not contrary to law or unreasonable

12           as defined in 28 U.S.C. § 2254(d).

13         •   Frye's motion to expand the record and for an evidentiary hearing on Claim 37 is

14           **denied** (ECF No. 549).

15         •   Any request for a certificate of appealability must be filed within **seven (7) days** of

16           the filed date of this order.

17         •   Frye's claim 42 is **granted.**  The court **grants** a writ of habeas corpus on this

18           ground and **grants** partial judgment to Frye. The sentence of death against Frye is

19           **vacated, effective ninety days from the filed date of this order.**   It is further

20           ordered that the State of California shall, within **ninety days** from the filed date of

21           this order, either initiate a new penalty phase trial or resentence Frye in accordance

22           with California law and the United States Constitution.

23       This order resolves ECF Nos. 549, 658, 706.

24         IT IS SO ORDERED.

25   DATED:  September 19, 2025.

                           _____

                           SENIOR UNITED STATES DISTRICT JUDGE